Pamela N. W. Lingo v. Commissioner.
Lingo v. Commissioner
Docket No. 33114.
United States Tax Court
T.C. Memo 1954-31; 1954 Tax Ct. Memo LEXIS 213; 13 T.C.M. (CCH) 436; T.C.M. (RIA) 54145; May 10, 1954, Filed George Craven, Esq., 13th Floor, Packard Building, Philadelphia, Penn., for the petitioner. Charles J. Hickey, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion This proceeding involves a deficiency in gift tax for the year 1947 in the amount of $25,650. The issue is whether the petitioner made a gift on the transfer in trust in 1947 of 100 shares of the common stock of the F. J. Stokes Machine Company. If this question is answered in the affirmative the issues are: (a) What was the fair market value of the common stock of the F. J. Stokes Machine Company on September 4, 1947? (b) What is the value of the right to income retained by the petitioner in the property transferred in trust; and, (c) Is the value of the property transferred to be reduced by the amount *214 of the gift taxes payable out of the trust estate? The facts stipulated are found accordingly. Findings of Fact The petitioner filed a gift tax return for the year 1947 with the collector of internal revenue for the first district of Pennsylvania. The petitioner was married to John A. Silver on June 18, 1932. Three children were born of that marriage. Pamela Stokes Silver was born on May 15, 1934, John Archer Silver, Jr., on January 3, 1939, and Wistar Cave Silver on December 15, 1940. On December 26, 1935, John A. Silver transferred to the petitioner, without consideration, 100 shares of the common stock of F. J. Stokes Machine Company. This transfer was reported by John A. Silver as an outright gift to the petitioner on a gift tax return (Form 709) filed by him for the calendar year 1935. John A. Silver executed this gift by causing a new stock certificate to be issued by the F. J. Stokes Machine Company to the petitioner, then known as Pamela N. W. Silver, and delivering the certificate to petitioner. Thereafter, the petitioner reported the dividends received from the 100 shares as her taxable income. On July 24, 1947, the petitioner and John A. Silver entered into a written *215 agreement for the separation of their property and the separate maintenance and support of the parties and their children. On September 4, 1947, the petitioner, as settlor, transferred to an irrevocable trust her 100 shares of the common stock of F. J. Stokes Machine Company. The trust agreement contains provisions for the disposition of income and principal as follows: "FIRST: To hold, manage, invest, reinvest and keep invested the corpus or principal thereof, and to demand, collect and receive the interest, dividends, income and profits thereof and, after deducting all proper and necessary charges and expenses, to pay over the net income as follows: "A. To Settlor until her death or remarriage; "B. Upon the death or remarriage of Settlor, whichever shall first occur, to divide the trust estate into equal shares of such number that there shall be one equal share for each of the three children of Settlor, Pamela Stokes Silver, John Archer Silver, Jr., and Wistar C. Silver, who may then be living, and one equal share for the issue then living of each of such children then deceased, and to set aside one of said equal shares for the benefit of each of the aforesaid children of *216 Settlor then living and one of said equal shares for the issue then living of each of said children of Settlor then deceased; "C. The Trustees shall invest and keep invested the principal of the equal shares set aside for each child as provided in Paragraph B of this Article FIRST (but subject to the provisions hereinafter set forth with respect to withdrawals of principal), and shall pay the net income derived therefrom to such child during his or her share of the principal from which his or her share of the income was derived shall be paid over, per stirpes, to such of the issue of such child only as shall be living at the death of such child and as shall attain the age of twenty-one years: Provided, however, that if any of such issue shall die during minority leaving a child or children him or her surviving, the child or children shall at once take absolutely the portion his or her parent would have taken had such parent lived to attain the age of twenty-one years." The agreement contains further provisions for the disposition of the principal in default of takers. The trust agreement contains the following provisions in reference to the payment of taxes: "FIFTH: If any *217 gift, estate, succession or inheritance tax of whatsoever character or nature, whether State or Federal, shall be determined finally to be due by Settlor or her estate by reason of this deed of trust or any interest herein confirmed, the Trustees shall pay the amount of such tax in the first instance, or, in the alternative as the Trustees may determine, shall refund said tax to the persons required by law to pay the same as follows: "A. Any gift tax shall, upon the request of Settlor, be paid or refunded as aforesaid out of the income of the trust estate and shall be a prior charge thereon; "B. Any other tax of the nature above described shall be paid or refunded as aforesaid from the principal of the trust estate." The petitioner was born February 23, 1911, so that her age on September 4, 1947, to her nearest birthday was 37. The F. J. Stokes Machine Company is a Pennsylvania corporation. It is engaged in the business of engineers and manufacturers of special machinery and equipment. It was originally a designer and supplier of special machinery for the pharmaceutical industry and has branched out into special applications of that machinery, including the manufacture of chemical *218 processing equipment involving the use of high vacuums and low temperatures. It manufactures machines for producing powered metal parts used by the automobile industry and machines for making dry-pressed parts used by the electrical and ceramic industries. One of its chief products is an automatic plastics moulding press. Engineering and research play a large part in its earnings. In 1947 the company had approximately 400 employees, of whom 40 to 50 were engineers or scientific technicians. The company had about 15 salesmen, all of whom had engineering training or background. The company held many valuable patents. The total sales, the net earnings after taxes, and the dividends paid by the F. J. Stokes Machine Company for the years 1935 to 1947, inclusive, are shown in the following schedule: Dividend paid
Net earnings
Preferred
Year
Total sales
(After taxes)
Common stock
stock
1935
$ 498,113.00
$103,576.13
$ 44,575
$5,000
1936
632,794.88
92,875.35
57,056
5,000
1937
854,247.85
116,641.74
57,056
5,000
1938
744,455.40
100,631.51
57,056
5,000
1939
966,428.50
158,372.27
99,848
5,000
1940
1,486,491.23
233,494.28
74,660
5,000
1941
2,538,973.31
300,554.76
143,750
5,000
1942
3,923,412.13
381,074.77
57,000
5,000
1943
3,480,465.37
264,584.19
38,000
5,000
1944
3,283,370.06
182,109.85
42,750
5,000
1945
3,205,439.60
145,838.90
57,000
5,000
1946
4,606,188.85
516,219.89
57,000
5,000
1947
6,005,395.04
661,938.60
147,250
5,000
*219 The total assets and surplus for the years 1935 to 1947, inclusive, are shown in the following schedule: Year
Total assets
Surplus
1935
$ 782,667.55
$ 488,912.77
1936
802,988.63
520,574.48
1937
868,751.03
575,596.72
1938
889,751.76
607,703.97
1939
947,900.04
657,932.87
1940
1,256,085.48
835,863.67
1941
1,720,070.94
972,815.04
1942
2,688,285.26
1,293,190.94
1943
2,494,211.37
1,397,515.65
1944
2,327,238.12
1,489,803.50
1945
2,045,777.75
1,447,058.32
1946
2,520,640.19
1,901,728.41
1947
3,150,675.97
1,956,371.74
The balance sheet of the company shows the following assets and liabilities for the year 1947: Assets
Cash
$ 395,712.78
Accounts receivable (net)
436,433.63
Notes receivable
18,911.31
Accrued interest received
Inventories
1,327,145.56
Investments
497,767.00
Land, building and equipment
(net)
467,646.12
Deferred assets
7,059.57
Post war refund
Total assets
$3,150,675.97
Liabilities and capital
Reserve for bank loss
Accounts payable
$ 27,576.47
Bank loans
Reserve for taxes
476,727.76
Surplus reserves
450,000.00
Preferred stock
50,000.00
Common stock
190,000.00
Surplus
1,956,371.74
Total liabilities
$3,150,675.97
*220 In 1947 there were outstanding 1,900 shares of common and 500 shares of 10 per cent preferred stock of the F. J. Stokes Machine Company. There was no bonded indebtedness. Only 482 shares of the common stock were held by persons outside of the immediate Stockes family. In 1947 the following provision relating to the rights of the stockholders in the event of distribution was added: "In the event of any distribution of the Company's capital or assets, or any part thereof, resulting from the liquidation, dissolution or insolvency of the Company, whether said distribution be voluntary or involuntary, the holders of the preferred stock shall be entitled to be paid in full the par value of their shares, together with all unpaid, accumulated and accrued dividends thereon, before any payments shall be made to the holders of the common stock and, thereafter, but not otherwise, the assets of the Company shall be distributed pro rata among the holders of the common stock until such holders shall have been paid in full the par value of their shares and, thereafter, the holders of the preferred stock shall be entitled to participate pro rata with the holders of the common stock in the distribution *221 of the remaining assets of the Company." The stock of the F. J. Stokes Machine Company was not listed on any stock exchange. No sales were made at or near the date of the transfer in trust in 1947. The petitioner was the absolute owner of the 100 shares of common stock of the F. J. Stokes Machine Company which she transferred to a trust on September 4, 1947. The fair market value of the 100 shares of common stock of the F. J. Stokes Machine Company on September 4, 1947, was not less than $1,125 per share. The petitioner has failed to show the value of the right to income retained by her in the property transferred in trust on September 4, 1947. Opinion LEMIRE, Judge: The first question presented is whether the petitioner was the absolute owner of the 100 shares of common stock of the F. J. Stokes Machine Company which she transferred to a trust on September 4, 1947. The petitioner contends that she received the shares under an alleged oral trust created in 1935; that the written trust agreement executed by her on September 4, 1947, was merely a confirmation of the oral trust; and that no gift was made in 1947. When the alleged oral trust was created in 1935, the petitioner *222 and her husband, John A. Silver, were residents of the State of Pennsylvania. A parol trust in personalty is recognized in that state. The Pennsylvania rule is that a person asserting the existence of a parol trust in personalty has the burden to establish it by evidence that is clear, precise, and indubitable. ; ; , affd. . The completeness of a trust is to be judged not merely by what was said or what was written but also by what was done. . Does the evidence warrant a finding that a parol trust was established in 1935? After a careful review of the record we are unable to conclude that it does. The petitioner did not testify and the only testimony bearing upon the alleged parol trust is that of the petitioner's former husband, *223 the donor of the shares in question in 1935. The testimony of Silver is to the effect that the petitioner had an insecurity complex and he reviewed at length her early background to establish that premise. He further testified that to alleviate her fear of insecurity he transferred the 100 shares of common stock of the F. J. Stokes Machine Company under a verbal understanding that petitioner was to hold the stock in trust, that he was to have all the voting rights, that petitioner was to have the income for her life, and that upon her death it was to go to their children. He further testified that at the time of the transfer he simply said, "This is yours. You use the income and give it to your children and our children." The gift was executed by Silver causing a new certificate to be issued in the then name of the petitioner without qualification. Silver, as donor, filed a gift tax return on March 13, 1936, showing the gift to his wife to be absolute and not in trust. Thereafter, the petitioner reported the income from the 100 shares as her individual income. At no time did the petitioner file any fiduciary returns as required by the revenue acts. Until the execution of the trust *224 agreement of September 4, 1947, the prior documentary evidence counterbalances the testimony of Silver that an alleged parol trust was created. In the trust agreement there are two recitals bearing upon the parol trust alleged to have been established in 1935. These selfserving statements were obviously inserted with reference to tax liability. In the trust instrument petitioner retains the income from the corpus until her death or remarriage, which is inconsistent with her right to the income under the alleged parol trust. In the light of all of the facts and circumstances, we are of the opinion that the petitioner has failed to establish the creation of a parol trust in 1935 by clear, precise, indubitable, and unequivocal evidence that the law requires to sustain such a trust. Accordingly, we have found as an ultimate fact that she became the absolute owner of the 100 shares of the common stock of the F. J. Stokes Machine Company by gift on December 26, 1935. It therefore follows that the transfer by petitioner of the same shares to the trust on September 4, 1947, constituted a taxable gift at that time. The second issue presents the question of the fair market value of the 100 *225 shares of common stock of the F. J. Stokes Machine Company on September 4, 1947. The Stokes stock was not listed on any stock exchange and no sales were made at or near the critical date. It is necessary to resort to other methods of determining value, such as consideration of the company's net worth, earning power, dividend-paying capacity, and all other relevant factors. Regulations 108, sec. 86.19(c). The Stokes stock was closely held. All but 482 shares of the 1,900 shares of common stock were owned by members of the Stokes family. The 100 shares involved represented a small minority interest. Upon distribution in liquidation after the payments in full of the par value, the preferred stock was entitled to participate pro rata with the common in the remaining assets. The financial data of the company over a considerable period has been set forth in our findings of fact. The petitioner offered the testimony of two expert witnesses and the respondent one expert witness, all of whom possessed the requisite qualifications to express an opinion as to the value of stock. The basic facts *226 were before all the witnesses. The values given by the petitioner's witnesses were $800 and $650 per share. The respondent's witness placed the value at $1,360 per share. In determining his deficiency the respondent had fixed the value at $1,750 per share. The difference in the results reached by the respective experts results largely from the use of different companies as comparatives, the evaluation of the discount for minority interest, and the lack of marketability. We think the variance in the companies used as comparatives results from the fact that the Stokes Company is somewhat unique, and true comparatives are not available. While the Stokes Company was a closelyheld family corporation, it was not dependent upon the particular skill of the members of the Stokes family. It was an engineering and research organization and employed from 40 to 50 engineers and 15 salesmen with engineering training and background. The record shows the company had continuously increased its sales and had growth possibilities in the newer plastic industry. Under such circumstances, we think, the possibility of liquidation would not be given any considerable importance by a prospective investor. *227 However, we have given such weight to that factor as we think is merited by the record. After due consideration of the company's net worth, earning power, dividend-paying capacity, and all other relevant factors, including the expert testimony, we have found as a fact that the fair market value of the common stock of the F. J. Stokes Machine Company on September 4, 1947, was not less than $1,125 per share. No useful purpose would be served by attempting to state the general principles we have applied in arriving at our determination of value. Under the facts and circumstances here presented valuation is necessarily an approximation derived from the evaluation of elements not readily measured. . The third question presented relates to the value of the right of the petitioner to the income from the trust corpus in determining the value of the gift for tax purposes. The gift tax is measured by the value of the property passing from the donor. Regulations 108, sec. 86.3. The petitioner contends that the property transferred by her *228 is the value of the property at the time of the gift, less the commuted value of the right retained by her to receive the income for her life, computed upon her life expectancy at the age of 37. The trust instrument provides that the income of the trust is to be paid "to settlor until her death or remarriage." The respondent contends that not only the petitioner's life expectancy but also the probability of her remarriage is a factor to be considered in determining the value of the right to income retained by the petitioner. The use of tables to compute the probability of a wife's remarriage has been recognized. , affd. ; ; . The petitioner argues that the petitioner had it wholly within her power to refrain from remarrying and to receive the trust income as long as she lives, and, since she retained the unfettered power to receive the income, the possibility that she might at some time give up that power is immaterial. We do not agree. We think the burden is upon the petitioner to establish *229 the value of her life estate subject to termination upon her remarriage. The probability of remarriage is a factor capable of actuarial determination. This record contains no evidence upon which this Court can make a determination of the value of the petitioner's retained right to income until her remarriage. In the absence of such evidence, the entire value of the property transferred must be taxed as a gift. . The final question is whether the value of the gift in trust should be reduced by the amount of gift tax payable out of the trust estate. Paragraph "FIFTH" of the trust instrument provides that the trustee shall pay or refund to any person required to pay the same any gift tax finally determined to be due from settlor. In the case of , we held that since the obligation of the trustee to pay the gift tax was incurred as a condition to the making of a gift the donor did not intend that the amount of the property necessary for the gift tax *230 liability would be a gift to the trust, and that such amount was not effective as property passing from the donor. In determining the net value of the gift for tax purposes the gift tax, computed as herein provided, is to be excluded from the gross value of the property transferred to the trust. Decision will be entered under Rule 50.