G. WILDY GIBBS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

SALLIE GIBBS MILLIKEN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 31329, 31330. Promulgated May 4, 1933.

*J. M. McMillin, Esq.*, for the petitioners.

*Shelby S. Faulkner, Esq.*, and *R. B. Cannon, Esq.*, for the respondent.

## OPINION.

LANSDON: The petitioners contend that the transfer of property to them evidenced by the trust instrument was a sale only to the extent of the encumbrance and the then present worth of the annuity to their mother and that the remaining value was a gift. If their view is correct the basis for computing the gain which they realized from the sale in the taxable year is the fair market value of the property at the date it was acquired, which they contend was at least equal to the amount which they received. The respondent's position is that the property was worth no more than the mortgage and the annuity and that the transaction was an outright sale. If this view is correct the basis for computing gain from the sale in the taxable year is the amount of the mortgages plus the annuity actually paid before that time or a total of $216,852.50.

A transfer of property may involve both a gift and a sale. In *Harry F. Robertson*, 5 B.T.A. 748, where the petitioner bought 80 acres of land from his mother-in-law for $200 an acre, it was stipulated that the land had a fair market value of $300 per acre at date of sale. The Board held that the difference between the fair market value of the land at date of the transaction and the cost paid was a gift and that the basis for computing the gain realized in a later sale was the fair market value of the land at the date it was acquired by the son. In *Robinson* v. *Commissioner*, 59 Fed. (2d) 1008, where there was a somewhat similar controversy over the transfer of shares of stock at less than their fair market value, the court held that " the surplus value of the stock over the actual price paid for the shares must be taken into consideration in determining the capital base and that such base is to be fixed at the true market value at the time the stock was acquired." We think these cases are controlling here. The true basis for determining the gain resulting from the sale in 1920 is the fair market value of the property in question at date of transfer to the trustee in 1918.

Fair market value is a matter of fact to be determined by evidence. In support of their contention the petitioners introduced an appraisal certificate issued by the Dallas Real Estate Board which fixes the value of the land involved at $382,131.60 as of February 18, 1918. This appraisal was made by the business property appraisal committee of such board, two of whom were present and testified at the hearing. Each of such appraisers said that all elements affecting the value of business real estate in that section of

the city were carefully considered by the committee and that such elements included sales of similar property, location, the fact that the land was a corner with frontage on four streets, the growth of the business district, the normal increase in the value of property and other material considerations. Each witness had been many years in the real estate business in Dallas. One dealt almost exclusively in such property and either he or members of his family owned property in the same neighborhood. In rebuttal the respondent introduced one witness who is also a member of the Dallas Real Estate Board.

After a careful consideration of the evidence of value adduced by the parties, we conclude that the land in question had a fair market value at February 18, 1918, in the amount of $382,131.60.

No witness for either party placed any definite figure of value on the improvements that were on the land at the date of the transfer to the trust. Petitioners' counsel claims a value of at least $75,000, which he bases on the rentals being received at the time of the transfer. Counsel for the respondent contends that the improvements had no value at date of the transfer since the income therefrom was less than the carrying charges of the property, which were made up of interest on the mortgage indebtedness, taxes, repairs and insurance. He argues that the entire value of the land could be made a profitable investment only by the removal of the improvements and the erection of buildings with rental capacity sufficient to make the ownership of the property profitable. It may well be that on valuable business real estate cheap or temporary improvements inadequate to produce income commensurate with the value of the land, in some circumstances, may be a liability. This would be true, however, only if the owners proposed to raze or remove existing structures and erect others with sufficient rental capacity to yield an adequate return on the combined value of the land and cost of the new buildings. It would not be true if the owners, as was the fact here, held the entire property as an investment from which it was hoped to realize profits by sale. In such a situation the very substantial rentals received for the use of the improvements were a material contribution to the carrying charges and we think probative evidence of some market value. For these reasons, based on the income realized therefrom we have found that the improvements in question had a fair market value of $30,000.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

STERNHAGEN, MURDOCK, and MCMAHON dissent.