RICHARD H. AND EMILY D. TURNER, PETITIONERS v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

PAMELA T. TURNER, PETITIONER v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 1019–66, 1032–66. Filed January 17, 1968.

---

*Harry S. Stark*, for the petitioners.
*Gary F. Walker*, for the respondent.

OPINION

Fay, *Judge:* Respondent determined deficiencies in the Federal income taxes of petitioners, as follows:

| Docket No. | Petitioner | Year | Amount |
|---|---|---|---|
| 1019-66 | Richard H. and Emily D. Turner | 1960 | $1,623.43 |
| 1032-66 | Pamela T. Turner | 1960 | 26,403.64 |
|  |  | 1961 | 26,403.65 |

The sole issue in docket No. 1019–66 is whether the gain recognized by petitioners Richard H. (hereinafter referred to as Richard) and Emily D. Turner on the sale of certain shares of stock received by them in a transfer less than 6 months earlier is taxable as long- or short-term capital gain. The question involved is whether, in determining the period for which the stock was held, the petitioners can include the holding period of their transferor pursuant to section 1223 (2) of the Internal Revenue Code of 1954.

The issue for determination in docket No. 1032–66 is whether a transfer by petitioner Pamela T. Turner (hereinafter referred to as Pamela) of shares of Parke, Davis & Co. stock on the condition that the various recipients pay the resulting gift tax liability was in part a sale and in part a gift which resulted in a taxable gain to Pamela. If this was a taxable transfer, the parties have agreed on brief that the gain was taxable in 1961, the year in which the transferees actually paid the amount of gift tax liability to Pamela.

Though in the notice of deficiency in docket No. 1032–66 respondent took the position that Pamela's transfer of stock was a part sale and part gift as to both individual transferees and trusts for her grandchildren, on brief he has conceded that the transfers to the trusts were in no part sales.

All of the facts have been stipulated, and the stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference.

Richard and Emily D. Turner, husband and wife, had their legal residence at Grosse Pointe, Mich., at the time the petition herein was filed.

Pamela, an individual, had her legal residence at Grosse Pointe Farms, Mich., at the time the petition herein was filed.

The joint Federal income tax return for the year 1960 in docket No. 1019–66 and the individual Federal income tax returns for the years 1960 and 1961 in docket No. 1032–66 were timely filed with the district director of internal revenue at Detroit, Mich. Pamela also filed a gift tax return for the year 1960 with the district director of internal revenue at Detroit, Mich., and paid a gift tax of $216,928.08.

In 1913, Pamela acquired 1,950 shares of Parke, Davis & Co. common stock at a cost basis of $128 per share. As a result of stock splits and stock dividends, she owned, on July 25, 1960, a total of 70,902 shares of said stock, the cost basis of which was $3.5203 per share.

On July 25, 1960, Pamela made the following transfers of Parke, Davis stock to the following persons, subject to each person paying a share of the gift tax thereon as determined by Pamela's tax counsel:

|  | No. of shares |
|---|---|
| Ernest T. Turner, R.F.D. 1, Syosset, Long Island, N.Y. | 4,820 |
| Richard, 33 Hendrie Lane, Grosse Pointe, Mich. | 4,700 |
| Pamela T. McClelland, 40 Beacon Hill Road, Grosse Pointe Farms, Mich. | 820 |
| James F. McClelland, Jr., and Pamela T. McClelland, as trustees for the benefit of Pamela K. McClelland | 2,000 |
| James F. McClelland, Jr., and Pamela T. McClelland, as trustees for the benefit of James F. McClelland, III | 2,000 |
| William C. McMillan, as trustee for the benefit of Barbara J. Turner (trustee's address: 1344 Free Press Building, Detroit, Mich. | 1,160 |
| William C. McMillan, as trustee for the benefit of Thomas C. Turner | 1,160 |
| William C. McMillan, as trustee for the benefit of Olga S. Turner | 1,160 |
| William C. McMillan, as trustee for the benefit of Timothy T. Turner | 1,160 |
| Total | 18,980 |

Prior to the transfer, each transferee signed a letter prepared by Pamela's counsel stating, *inter alia*, that—

We have further been informed that this gift is being made subject to my paying the gift tax on same. This letter can be taken as my acceptance of the proposed condition of the gift, and I agree to accept as my share of the gift tax an amount which is computed by your tax counsel.

The letters signed by the individual transferees, Ernest T. Turner and Richard, were dated June 29, 1960. The letter signed by the individual transferee, Pamela T. McClelland, was dated June 30, 1960. With regard to the trust transferees, the respective trustees, in a schedule attached to the trust agreements, agreed to pay all Federal gift taxes on the above transfers out of the corpora of said trusts in equal shares, without personal liability on the part of the trustee. Each of the trust agreements was dated July 25, 1960.

In the period January 1, 1961, through April 15, 1961, Pamela received from the following transferees the following checks in pay-

ment of their computed shares of the gift tax liability as computed by Pamela's counsel:

|  | *Amount* |
|---|---|
| Ernest T. Turner | $43,787.38 |
| Richard | 42,697.24 |
| Pamela T. McClelland | 7,449.31 |
| James F. McClelland, Jr., and Pamela T. McClelland, trustees for Pamela K. McClelland | 18,196.04 |
| James F. McClelland, Jr., and Pamela T. McClelland, trustees for James F. McClelland, III | 18,169.04 |
| William C. McMillan, trustee for Barbara J. Turner | 10,538.04 |
| William C. McMillan, trustee for Thomas C. Turner | 10,538.04 |
| William C. McMillan, trustee for Olga S. Turner | 10,538.04 |
| William C. McMillan, trustee for Timothy T. Turner | 10,538.04 |
| Total | 172,424.17 |

The difference between the amount of the gift tax paid by Pamela of $216,928.08 and the $172,424.17 received from the transferees was $44,503.91, the amount of the gift tax attributable to a separate transfer to a transferee who did not assume a share of the gift tax liability.

Each of the transferees raised the funds for payment of the gift tax as follows:

| | | | *Amount* |
|---|---|---|---|
| **Ernest T. Turner:** | | | |
| From available cash | | | $43,787.38 |
| **Richard:** | | | |
| 3/4/61 | Sale of 600 shares of Parke, Davis | $25,348.07 | |
| 3/10/61 | Sale of 400 shares of Parke, Davis | 17,114.21 | |
| 4/1/61 | Balance from available cash | 234.96 | 42,697.24 |
| **Pamela T. McClelland:** | | | |
| From available cash | | | 7,449.31 |
| **Pamela K. McClelland:** | | | |
| 1/27/61 | Sale of 100 shares of Parke, Davis | 3,955.32 | |
| 3/16/61 | Sale of 100 shares of Parke, Davis | 4,303.44 | |
| 3/27/61 | Loan from mother, Pamela T. McClelland | 10,000.00 | 18,258.76 |
| **James F. McClelland, III, Trust:** | | | |
| 1/27/61 | Sale of 100 shares of Parke, Davis | 3,955.32 | |
| 3/16/61 | Sale of 100 shares of Parke, Davis | 4,303.44 | |
| 3/27/61 | Loan from mother, Pamela T. McClelland | 10,000.00 | 18,258.76 |
| **Barbara J. Turner Trust:** | | | |
| 1/26/61 | Sale of 100 shares of Parke, Davis | 3,955.32 | |
| 3/22/61 | Sale of 150 shares of Parke, Davis | 6,139.09 | |
| 4/1/61 | Balance from income earned | 443.63 | 10,538.04 |
| **Thomas C. Turner Trust:** | | | |
| 1/26/61 | Sale of 100 shares of Parke, Davis | 3,955.32 | |
| 3/22/61 | Sale of 150 shares of Parke, Davis | 6,139.09 | |
| 4/1/61 | Balance from income earned | 443.63 | 10,538.04 |

| Olga S. Turner Trust: | | | *Amount* |
|---|---|---|---|
| 1/26/61 | Sale of 100 shares of Parke, Davis_____ | $3, 955. 32 | |
| 3/22/61 | Sale of 150 shares of Parke, Davis_____ | 6, 139. 09 | |
| 4/1/61 | Balance from income earned_____ | 443. 63 | $10, 538. 04 |
| | | | |
| Timothy T. Turner Trust: | | | |
| 1/26/61 | Sale of 100 shares of Parke, Davis_____ | 3, 955. 32 | |
| 3/22/61 | Sale of 150 shares of Parke, Davis_____ | 6, 139. 09 | |
| 4/1/61 | Balance from income earned_____ | 443. 63 | 10, 538. 04 |

In August 1960, Richard sold 500 shares of Parke, Davis common stock, which had been transferred to him on July 25, 1960, at a sale price after commissions and taxes of $22,524.10.

Respondent, in his statutory notice in docket No. 1019–66, determined that Richard and Emily D. Turner had realized a short-term gain rather than a long-term gain as reported on the sale of the Parke, Davis stock which they had acquired in July 1960. In his statutory notice in docket No. 1032–66, respondent determined that Pamela's July transfer was in part a sale and that, thereby, Pamela realized a long-term capital gain.

The primary question for determination is whether the transfer of shares by Pamela to several individual transferees on the condition that the recipients pay the resulting gift tax was a net gift as contended by Pamela or was a part sale, part gift as argued by the respondent.

The procedure of making a gift subject to the provision that the donee will pay the resulting gift tax is not a novel one and has been involved in a number of cases litigated before this Court. *Estate of A. E. Staley*, 47 B.T.A. 260 (1942), affd. 136 F. 2d 368 (C.A. 5, 1943), certiorari denied 320 U.S. 786 (1943) ; *Sarah Helen Harrison*, 17 T.C. 1350 (1952), acq. 1952–2 C.B. 2; *Pamela Lingo*, T.C. Memo. 1954–471; *Craig R. Sheaffer*, 37 T.C. 99 (1961), affd. 313 F. 2d 738 (C.A. 8, 1963), certiorari denied 375 U.S. 818 (1963) ; and *Estate of Annette S. Morgan*, 37 T.C. 981 (1962), affd. 316 F. 2d 238 (C.A. 6, 1963), certiorari denied 375 U.S. 825 (1963). See and compare *Kruesel* v. *United States*, an unreported case (D.Minn. 1963, 12 A.F.T.R. 2d 5701, 63–2 U.S.T.C. par. 9714).

In the *Harrison* and *Lingo* cases, the question of the tax effect of this type of transfer arose in a gift tax context. In both cases the donor had transferred property to a trust on the condition that the donee would pay the gift tax resulting from the transfer. In both cases this Court held that in determining the value of the gifts subject to tax the gross value of the gifts should be reduced by the amount of the gift tax. The rationale of the reduction was that because the obligation to pay the tax was incurred by the donee as a condition

of the gift, the donor did not have the intent to make other than a net gift.

In the *Staley* case, the decedent therein desired to make gifts in trust to his five children but did not have sufficient funds with which to pay the resulting gift tax. In order to obtain such funds and still make the contemplated gifts, he transferred his stocks in trust in return for the trustee's promise to pay to him from the trust income the sum of $150,000. The Court held that the income from the trusts was taxable as ordinary income and rejected petitioner's argument that it was a return of capital from a sale of the stock to the trusts. In so holding, the Court stated:

The treatment of the money received by decedent as a return of capital from the sale of securities seems to us entirely artificial. Petitioner was making a gift of property to his children. He was not selling them shares of stock. One does not sell over $2,000,000 worth of shares for $150,000. It is equally artificial to treat the transactions as in part a sale and in part a gift. The property transferred was for shares of stock and if it had been decedent's intention to sell some of those shares he could have easily designated the ones he intended to sell as distinct from those that he was giving away. Since there was no bona fide sale of stock, the case of *Reginald Fincke*, 39 B.T.A. 510, relied upon by petitioner, is clearly distinguishable. The simple fact is that decedent was providing a means of securing $150,000 from the first income of the trusts, and this income he received. The fact that payment of the $150,000 was to be made out of income is indicative of decedent's retention of a right to income in that amount. See *Bettendorf* v. *Commissioner*, 49 Fed. (2d) 173. Whether we say decedent made himself a preferred beneficiary of the trusts to the extent provided, *Annie Louise Van Aken*, 35 B.T.A. 151, or that he reserved $150,000 of the income of the trusts when he made the gifts, *Michael Fay, et al., Executors*, 34 B.T.A. 662, is of no particular importance in determining the fundamental question of whether or not the sum received was taxable income. Nothing more nor less than gifts of the shares was involved and the $150,000 was received by decedent as income rather than return of capital. [47 B.T.A. at 265.]

The Court of Appeals, in affirming the Court, stated that the gift—

was intended to be, and actually was, a gift of the entire corpus and of all the income except an amount necessary to assist in paying the gift taxes.[2] Expressed differently, it was an outright transfer for no consideration, but with a reservation to the donor of a portion of the income. * * * [136 F. 2d at 369–370. Footnote omitted.]

In the *Sheaffer* case, this Court, relying upon the *Staley* case, held that trust income which the trustee had discretion to use to pay the donor's gift tax liability was taxable to the donor under section 677 of the Internal Revenue Code of 1954. The Court stated that in both cases the income was reserved for the benefit of the donor and, hence, was taxable to him. The Court of Appeals for the Eighth Circuit affirmed this decision and stated that "What the trustee received as trust income and applied to payment of the gift tax, the Sheaffers in

reality constructively received, and on that the petitioners must be taxed." (313 F. 2d at 743.)

In the *Morgan* case, the decedent established certain irrevocable trusts which contained in the trust instruments provisions which provided that the trustees should pay the donor's gift tax liability. The trustees had the discretion, in order to obtain the funds necessary to pay the tax, either to sell corpus or to borrow using the corpus as security. In fact, they chose the latter method and paid the tax in 1956. The loan was repaid from the income of the trusts in later years. This Court held that the income of the trusts used to repay the loan was not taxable to the decedent in 1957 and 1958. The Court concluded that there was no theory by which the trust income of succeeding years could be taxable to the decedent.

In all of the above cases, both in a gift tax and income tax context, the major premise of each decision is that a condition imposed by the transferor that the tranferee will pay the gift tax resulting therefrom does not alter the result that the transfer constituted a gift. The rationales of the above cases are totally inconsistent with a finding that the transfer was a part sale, part gift. The respective courts in the above cases have, in our opinion, looked at the facts of each case, including the close family relationships involved, and have determined what was in fact intended by the parties. See *Sarah Helen Harrison*, *Pamela Lingo*, and *Estate of A. E. Staley*, *supra*.

This approach has also been utilized in *Kruesel* v. *United States*, *supra*. In *Kruesel*, petitioners were the owners in fee simple of certain farm property on which was situated a house. In 1958, petitioners sold the property to a corporation for $225,000, reserving for themselves the rent-free occupancy of said house and surrounding area for their respective lives plus 6 months. The Government argued that the transaction should be characterized as a sale of all that petitioners owned in return for $225,000 plus the right to rent-free occupancy for life. The court therein rejected this argument and held that the petitioners had reserved an estate which had the essentials of a life estate and that such was not part of the amount realized by them from the sale. In rejecting the Government's position that the petitioners did not reserve a life estate due to the absence of terms of art, the court stated that "what the parties 'got' must be determined from the effect of the transaction on the rights of the parties."

In the case at bar, respondent, in his statutory notice, took the position that both the transfers to individual recipients and the transfers in trust were part sale, part gift transfers. On brief, however, respondent has conceded that the transfers in trust were not sales. He distinguishes the two classes of transfers on the basis that the trustees were not personally liable for the tax while the individual

transferees personally promised to pay the tax. He concludes that in this latter class of transfers Pamela did not retain any interest in the property transferred but accepted instead the personal promises of the recipients. Respondent further argues that such facts operate to distinguish all of the above trust cases.

We are of the opinion that it is the substance rather than the form of the transfers which must be the decisive factor. It is clear that, on these facts, Pamela wished to make gifts to her children and grandchildren. She acted upon this intent and transferred certain shares of stock to each one of them. To the children she gave the stock outright while for the grandchildren the transfer was made to a trust for their benefit. She made all of these transfers subject, in substance, to the same condition, to wit, that the donees pay the resulting gift tax. We think it clear that what was intended by Pamela was a net gift, the value of the shares less the value of the gift tax payable on the transfers. We are not persuaded that these substantively identical transfers can be characterized differently for income tax purposes as is urged by the respondent.

We think that respondent's attempted distinction on the basis of the type of promise obtained from the donees ignores the realities of the situation. In making a gift by the method of creating a trust, Pamela could not expect to obtain a trustee who would be willing to render himself personally liable for the gift tax due on the transfer. The only logical source from which the funds could therefore come is the transferred assets themselves. We cannot therefore attach any great weight to the type of liability involved in the transfers in trust as does the respondent. We also note that in this context we have, in prior cases, not distinguished between situations in which the trustee used corpus and income and situations in which he borrowed funds from an independent party in order to pay the tax. Both types of situations have been characterized as gifts. Compare *Estate of A. E. Staley* and *Estate of Annette S. Morgan,* both *supra.*

In attempting to distinguish the *Kruesel* case, which we believe is analogous to the case at bar, the respondent states that the interest was retained under the instrument of transfer. It is our opinion that such fact is in essence also present in the case before us. We fail to see any real difference between that case and the situation before us in which the individual donees signed a separate document at the time of transfer. The effect in both cases is to reserve in the transferor a right to the use of a portion of the transfer.

We further note that the acceptance of respondent's position would lead to a strange result in computing the donee's basis for the property received. Section 1.1015-4,[1] Income Tax Regs., provides that—

---

[1] Though this regulation did not read in its present form until its amendment by T.D. 6693 in 1963, the amendment did no more than conform the regulation to changes occasioned by sec. 43 of the Technical Amendments Act of 1958 (72 Stat. 1640).

Where a transfer of property is in part a sale and in part a gift, the unadjusted basis of the property in the hands of the transferee is the sum of —

(1) whichever of the following is the greater:

(i) the amount paid by the transferee for the property, or

(ii) the transferor's adjusted basis for the property at the time of the transfer, and

(2) The amount of increase, if any, in basis authorized by section 1015(d) for gift tax paid (see § 1.1015–5).

On the facts of the case at bar, respondent argues that the transferees' basis should be computed as follows:

| | |
|---|---|
| Total gift tax paid | $172,424.17 |
| Total shares | 18,980.00 |
| Gift tax per share | 9.0845 |
| *On a per share basis* | |
| Amount paid by transferee (i.e., the gift tax) | 9.0845 |
| Transferor's adjusted basis | 3.5203 |
| Section 1015(d) adjustment (i.e., the gift tax) | 9.0845 |

Because the $9.0845, the gift tax paid, represents both the amount paid by the transferees and the gift tax paid adjustment to basis under Income Tax Regs. section 1.1015–5, respondent concludes that the basis of each share is $9.0845 plus $9.0845, or $18.1690. We agree, given respondent's premise that the payment of the gift tax by the individual donee results in the transfer being a part sale, part gift, that his computation is necessitated by the language of the regulations. We are of the opinion, however, that the result reached, to wit, allowing the transferees to twice receive credit for the same amount of money, once as a payment and once as an adjustment for gift tax paid, is a persuasive indication that the part sale, part gift characterization is not appropriate to the facts of the instant case.[2]

We, therefore, hold that the transfers by Pamela were gifts and did not result in a taxable gain to her.

The final issue for consideration is whether Richard, in determining the period for which the stock was held prior to sale, can include the period for which Pamela held the stock prior to the transfer pursuant to section 1223(2).

Section 1223(2) provides:

(2) In determining the period for which the taxpayer has held property however acquired there shall be included the period for which such property was held by any other person, if under this chapter such property has, for the purpose of determining gain or loss from a sale or exchange, the same basis in whole or in part in his hands as it would have in the hands of such other person.

[2] Compare Income Tax Regs. sec. 1.1001–1(e), example 1. See and compare the following cases which have held that the transfers constituted a part sale, part gift and which are relied on by respondent. *Gertrude H. Blackburn,* 20 T.C. 204 (1953), involving a transfer of land in exchange for a note with a face amount equal to the transferor's adjusted basis for the property, and *May Rogers,* 31 B.T.A. 994 (1935), reversed and remanded 107 F.2d 394 (C.A. 2, 1939), involving a transfer of stock in exchange for an annual annuity. See also *G. Wildy Gibbs,* 28 B.T.A. 18 (1933), and *Harry F. Robertson,* 5 B.T.A. 748 (1926).

Because Richard's basis under section 1015(a) in the case at bar is the same as Pamela's basis, it follows that under section 1223(2) he is entitled to include the period for which the shares were held by Pamela. It follows, therefore, that the gain on the sale of these shares is taxable as long-term capital gain.

> *Decision will be entered for the petitioners in docket No. 1019-66.*

> *Decision will be entered under Rule 50 in docket No. 1032-66.*