VICTOR P. DIEDRICH AND FRANCES T. DIEDRICH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Diedrich v. Commissioner
Docket No. 1800-77.
United States Tax Court
T.C. Memo 1979-441; 1979 Tax Ct. Memo LEXIS 81; 39 T.C.M. (CCH) 433; T.C.M. (RIA) 79441; November 6, 1979, Filed *81 Petitioners did not realize income on transfers of stock to or for the benefit of their children where the transfers were conditioned on the donees agreeing to pay the Federal and state gift taxes resulting from the transfers. Turner v. Commissioner,49 T.C. 356 (1968), affd. per curiam 410 F. 2d 752 (6th Cir. 1969) followed. Phillip H. Martin and Bruce J. Shnider, for the petitioners. Burns Mossman, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined a deficiency of $27,831 in petitioners' 1972 Federal income tax. After concessions, the sole issue for decision is whether petitioners realized income on transfers of stock to or for the benefit of their children where the transfers were conditioned on the donees agreeing to pay Federal and state gift taxes resulting from the transfers. FINDINGS OF FACT All of the facts have been stipulated and are found accordingly. Victor P. and Frances T. Diedrich, husband and wife, resided in Owatonna, Minnesota, when they timely filed their 1972 joint Federal income tax return with the Office of the Internal Revenue Service *82 at Ogaden, Utah, and when they filed their petition in this case.
On April 1, 1972, Victor P. Diedrich made a gift of 51,073 shares of voting and nonvoting common stock of Owatonna Manufacturing Company, Inc. (hereinafter OMC), to or for the benefit of his three adult children, Eugene F. Diedrich, JoAnn D. Petkus, and Madelyn D. Smith. Also, on April 1, 1972, Frances T. Diedrich made a gift of 60 shares of OMC common stock to her son, Eugene F. Diedrich. A total of 17,025 shares, consisting of 12,903 shares of voting common stock and 4,122 shares of nonvoting common stock, was transferred outright to Eugene F. Diedrich. A total of 17,024 shares of nonvoting common stock was transferred to each of the irrevocable trusts created by Victor P. Diedrich on April 1, 1972, for the benefit of his daughters, JoAnn D. Petkus (hereinafter the Petkus Trust) and Madelyn D. Smith (hereinafter the Smith Trust). Eugene F. Diedrich was and is the sole trustee for the Petkus and Smith Trusts. Eugene F. Diedrich, the Petkus Trust, and the Smith Trust are hereinafter referred to as the Donees. At the time the gifts were made, Eugene, for himself and as the trustee of the Petkus and Smith Trusts, *83 signed three agreements on behalf of each of the Donees. The agreements provided that each Donee would pay its share of the Federal and state gift taxes arising from the stock transfers as a condition to receiving the gifts. For Federal gift tax purposes, petitioners agreed to treat their gifts as if made one-half by each. On or before August 15, 1972, they reported the stock transfers by timely filing Federal gift tax returns for the second quarter of 1972. The OMC stock transferred to the Donees was valued at $7.80 per share.The gross amount of the gift of 51,073 shares of OMC stock reported on the return was $398,369. After reducing this amount by the Federal and state gift taxes to be paid by the Donees, the net amount of the gift was determined to be $316,869. The resulting Federal gift tax liability of $62,992 on the $316,869 gift was paid by the Donees in 1972. On or before April 15, 1973, petitioners timely filed a Minnesota gift tax return to report the gifts made in 1972. Minnesota gift taxes of $18,508 were paid by the Donees during 1973.
In order to satisfy the Federal gift tax liability, Eugene, acting in his individual capacity and as trustee of the Petkus *84 and Smith Trusts, borrowed the sum of $62,992 from OMC. Each loan was represented by three separate checks payable to the order of the respective borrower. On or about August 15, 1972, Eugene paid the gift tax, individually and as trustee of the Trusts, by endorsing these checks to the order of the Internal Revenue Service. To pay the principal and interest on the loans from OMC, the Petkus and Smith Trusts each sold 2,728 shares of OMC stock to OMC in December 1972 at $7.80 per share. Eugene paid the principal and interest on the loans from OMC with his personal funds. On or before April 15, 1973, the Trusts each sold additional shares of OMC stock at $7.80 per share to pay their respective portions of the Minnesota gift tax in 1973. Eugene again used his personal funds to pay his portion of the state tax in 1973. Upon audit of petitioners' Federal gift tax returns in 1974, the value of the OMC stock transferred to the Donees was increased from $7.80 to $13.00 per share. Accordingly, the value of the 51,073 shares was determined to be $663,949. The additional Federal and Minnesota gift taxes of $64,213 resulting from the audit were paid by the Donees in 1975.
After the *85 audit gave rise to increased gift tax liabilities, OMC agreed to pay the Petkus and Smith Trusts additional consideration for the purchase of their stock in December 1972. This increased the purchase price to $13.00 per share and OMC also agreed to pay interest to the Trusts from the date of sale to the date of payment of such additional consideration. Each Trust used these proceeds to pay its respective portion of the additional Federal and Minnesota gift taxes resulting from the audit. Eugene paid his portion of the additional taxes from his personal funds. Petitioners had a basis of $1.00 per share in the OMC stock transferred to the Donees and, as of the date of the gift, had held this OMC stock longer than six months. One of the reasons they made the gift to Eugene, who is now president of OMC, was to encourage his continued participation in the business. They transferred the OMC stock in trust for the benefit of their daughters primarily to provide them with an equity interest in the family business. Eugene was made sole trustee of the daughters' trusts to ensure that majority control of the outstanding shares of OMC stock will remain in the control of the Diedrich family. *86 Since petitioners were cash method taxpayers, respondent conceded that the gift taxes paid by the Donees in 1973 and 1975 are not at issue in this case which involves only taxable year 1972. On their income tax return for 1972 petitioners did not report any income by reason of the transfers of the stock. In his statutory notice respondent determined that the transfers constituted exchanges of stock giving rise to income in the form of capital gain in 1972. OPINION The sole issue for decision is whether petitioners realized income on transfers of stock to or for the benefit of their children where the transfers were conditioned on the Donees agreeing to pay Federal and state gift taxes resulting from the transfers. The basic facts are not in dispute. Petitioners made gifts of stock which had a fair market value in excess of their basis. The gifts were conditioned on the Donees paying all applicable gift taxes, which they eventually did. The gift tax liability exceeded the total amount of donors' basis in the transferred stock.
Respondent, relying upon Johnson v Commissioner,59 T.C. 791 (1973), affd. 495 F. 2d 1079 (6th Cir. 1974), characterizes *87 the transaction as in part a sale and in part a gift. He reasons that since the gift taxes on the transfer were the legal obligation of the donors, [1] Donees' payment constituted income which was in effect an amount realized as consideration for the transfer. This, he claims, resulted in income to the donors to the extent the payment exceeded their basis in the transferred stock. Petitioners, relying on a long line of decisions from this Court, [2] maintain that they merely made a net gift of the difference between the fair market value of the stock and the gift tax paid. In characterizing a transaction as a net gift, we have repeatedly held that the donor does not realize income as a result of the transfer. *88 In each case involving facts similar to the ones before us, we have held that the transfer constituted a net gift resulting in no income tax liability to the donor. [3] We recently followed this approach for characterizing the transaction in Estate of Henry v. Commissioner, 69 T.C. 665 (1978), on appeal (6th Cir. May 5, 1978). For the reasons set forth therein, we feel compelled to once again reject respondent's position that the transaction should be treated as a part-sale part-gift. To reflect the foregoing, Decision will be entered for the petitioners.
Footnotes
1. Sec. 2502(d), I.R.C. 1954↩.
2. Estate of Henry v. Commissioner, 69 T.C. 665 (1978), on appeal (6th Cir. May 5, 1978); Hirst v. Commissioner, 63 T.C. 307 (1974), affd. 572 F. 2d 427 (4th Cir. 1978); Estate of Davis v. Commissioner, T.C. Memo. 1971-318, affd. per curiam 469 F. 2d 694 (5th Cir. 1972); Turner v. Commissioner, 49 T.C. 356 (1968), affd. per curiam 410 F. 2d 752↩ (6th Cir. 1969).
3. For this reason Old Colony Trust Co. v. Commissioner, 279 U.S. 716↩ (1929), as advanced by respondent, is not applicable.