*Decision will be entered under Rule 50.*

E. A. Hughes, Petitioner, v. Commissioner of Internal Revenue, Respondent.

Docket No. 67335. Promulgated August 23, 1935.

*William Mitchell, Esq.*, for the petitioner.
*Shelby S. Faulkner, Esq.*, for the respondent.

OPINION.

TURNER: The first assignment of error is based on the inclusion in 1928 income of the sum of $207,383.85, received by the petitioner in 1929 as a reimbursement by the United Public Service Co. of income taxes paid by the petitioner on profits realized from the sale to that company of stock in the Hughes Electric Co. and the

Knife River Coal Mining Co. In his notice of deficiency, the respondent explained his action in this respect as follows:

(1) While it appears that the amount received representing a reimbursement of income taxes due and payable on the profit from the sale of stock was reported in the 1929 return, it is clear from a reading of the contract that it represents a part of the sale price of the stock and is taxable in the year the sale was made. The tax assessed and paid for 1929 on such profit is therefore subject to credit or refund.

The petitioner makes no point that the payments in issue were not a part of the price received for the stock of the two companies previously mentioned, but does contend that, since the payments were not actually received until the year 1929 and his books of account were kept and his income reported on the cash receipts and disbursements basis, such payments constituted income in 1929, when received, and not in 1928, when the sale was made.

We had this specific question before us in the case of *C. B. Shaffer*, 29 B. T. A. 1315. Shaffer was a member of a partnership which sold its assets to a corporation in 1919. The contract of sale contained a provision with reference to the payment of the income tax on any profit derived from the sale, substantially similar to the provision contained in the contract of sale in this case. The tax became due and was paid in 1920. We there held that the tax so paid in 1920 did not constitute income to Shaffer and his partner in 1919, the year of the sale, on the ground that the obligation to pay the tax had no fair market value at the time the sale was consummated. We said:

At the time of the receipt of the promise to pay the taxes in May 1919, it could not be determined whether any amount would ever be paid. The taxes to be paid were those on the income of the partners, including certain surtaxes for the calendar year 1919. They were extensively engaged in many enterprises, certain transactions giving rise to gains and others to losses. On the one hand the net result of such operations might be losses, resulting therefore in no tax liability for the year, while again such operations might have resulted in such large profits as to produce a much greater tax than the amount finally paid by the vendee. In view of the highly speculative and contingent nature of the right acquired from the vendee, we do not think it can be said to have had a fair market value at the time of its receipt.

Some of the members of the Board were of the opinion in *C. B. Shaffer*, *supra*, that the amount paid by the purchaser as income taxes for the vendor did not constitute income in the year of the sale, in view of the fact that the vendor was on a cash basis. This view is supported by our decisions in *W. A. Hoult*, 23 B. T. A. 804; *A. W. Henn*, 20 B. T. A. 1133; and *Charles C. Ruprecht*, 16 B. T. A. 919; affd., 39 Fed. (2d) 458.

Under either theory the result is the same. In section 202 (a) of the Revenue Act of 1928, it is provided that gain from the sale of property is the excess of "the amount realized" over the basis. It is a matter of fact that the money did not become due and was not paid until the year following the sale. It is equally true that even though the obligation to pay the income tax for which the vendee might become liable was a valid and binding obligation, which arose at the time of the sale, the facts show that the ultimate liability of the purchaser was so highly speculative and contingent that it could not be said that the amount which subsequently became due and payable in the following year was realized, within the meaning of the statute, in the year of the sale. *Teck Hobbs*, 26 B. T. A. 241. Cf. *Old Colony Trust Co.*, 279 U. S. 716, affirming 7 B. T. A. 648; *Charles Bispham Levey*, 26 B. T. A. 889; affd., 68 Fed. (2d) 401; *Providence & Worcester Railroad Co.*, 5 B. T. A. 1186; *Norwich & Worcester Railroad Co.*, 2 B. T. A. 215; and *United States* v. *Norwich & Worcester Railroad Co.*, 16 Fed. (2d) 944. On this issue the petitioner is sustained.

On the remaining assignment of error the petitioner contends that the decision in *Edmond A. Hughes*, 27 B. T. A. 1022, establishes the cost base for his stock in the Knife River Coal Mining Co. He contends that our findings were that he and Little acquired the stock and bonds of that company in a tax free exchange, and, starting from that premise, argues that in effect we held that $224,375.10, the full amount of the advances made by him and Little to the Beulah Co., constituted a part of the cost basis of his Knife River Coal Mining Co. stock and bonds. Relying on that decision, he takes the position that the issue now under discussion is *res judicata*.

It seems obvious that the petitioner has erroneously interpreted the issues and decision in *Edmond A. Hughes*, *supra*. In that case there was no issue which called for a finding as to the basis for determining the gain or loss from a subsequent sale or disposition of Knife River Coal Mining Co. stock, and we made no such finding. The only issue raised by the pleadings, in so far as there might be any applicability to this case, was one of bad debts. The petitioner sought to deduct from income the difference between sums advanced to the Beulah Co. during its existence and the value at which the assets which had formerly belonged to the Beulah Co. were paid in for stock of the Knife River Coal Mining Co. Our holding was that the petitioner and Little were not entitled to the bad debt deduction claimed, since they had failed to show that they had lost in 1924 any part of the advances which had been made to the Beulah Co. in prior years. It was pointed out that, if the Beulah Co.

obligations had become worthless, that worthlessness had occurred prior to 1924. On petition for review, filed by Little, the United States Circuit Court of Appeals for the Eighth Circuit, in *Little* v. *Helvering*, 75 Fed. (2d) 436, affirmed the decision of the Board holding that losses claimed by the petitioner and Little in respect of their advances to the Beulah Co. were sustained in 1923, prior to the acquisition of the assets by the Knife River Coal Mining Co. in 1924. Clearly the claim *of res judicata* is not sustained.

The evidence in the record before us does not show that the basis for determining petitioner's gain from the sale of his Knife River Coal Mining Co. stock was greater than that determined by the respondent.

*Decision will be entered under Rule 50.*