

Finally, the district court cannot be faulted for failing to make extensive findings in response to a mere inquiry at a pre-trial hearing, unaccompanied by either facts or argument. *See United States v. Costa,* 425 F.2d 950, 954 (2d Cir. 1969), *cert. denied,* 398 U.S. 938, 90 S.Ct. 1843, 26 L.Ed.2d 272 (1970).

We also reject Goldsmith's argument that the district court's charge with regard to the voluntariness of his statements was improper. The charge was virtually identical to the language of the statute. 18 U.S.C. § 3501(a). *Compare United States v. Barry,* 518 F.2d 342 (2d Cir. 1975).

*Conclusion*

The judgment entering conviction of Reed is reversed and her case is remanded to the district court for a new trial; judgment of conviction of Goldsmith is affirmed.

Winter and Butzner, Circuit Judges, dissented from decision of the court en banc for reasons stated in opinion by Thomsen, Senior District Judge, prepared for majority of the panel.

**Edna Bennett HIRST, Appellee,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellant.**

No. 75–1543.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 9, 1976.

Decided Jan. 4, 1978.

Jonathan S. Cohen, Atty., Tax Division, Dept. of Justice, Washington, D.C. (Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Louis A. Bradbury, Attys., Tax Division, Dept. of Justice, Washington, D.C., on brief), for appellant.

Michael Mulroney, Washington, D.C. (John P. Lipscomb, Lee, Toomey & Kent, Washington, D.C., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, BRYAN, Senior Circuit Judge, and WINTER, CRAVEN,* BUTZNER, RUSSELL, WIDENER and HALL, Circuit Judges, sitting en banc.

### PER CURIAM:

After a hearing by a panel of this court, Judge Roszel C. Thomsen, United States District Judge for the District of Maryland, sitting by designation, prepared an opinion for a majority of the panel reaching a conclusion that the judgment of the Tax Court should be reversed. Senior Judge Albert V. Bryan prepared a dissenting opinion. After these opinions had been circulated but before they had been filed, a majority of the judges in regular active service voted for rehearing en banc.

For the reasons stated in the dissenting opinion of Senior Judge Bryan prepared for the panel [see, infra, p. 431], as supplemented in an opinion prepared by Chief Judge Haynsworth for a majority of the en banc court, Chief Judge Haynsworth, Senior Circuit Judge Bryan, and Circuit Judges Russell, Widener and Hall join in an affirmance of the decision of the Tax Court.

Circuit Judges Winter and Butzner dissent for the reasons stated in the opinion of Judge Thomsen.

### HAYNSWORTH, Circuit Judge:

The primary issue in this case is whether a parent is liable for the payment of income taxes as the result of transactions in which she gave to her son, his wife and their children three tracts of land upon the son's agreement to pay any applicable state and federal gift taxes. We affirm the decision of the Tax Court, *Edna Bennett Hirst*, 63 T.C. 307 (1974), and hold that, under the circumstances of these gifts, Hirst·did not realize any taxable income.

The facts are accurately and adequately stated in Judge Thomsen's opinion [see page 434, infra].

Any analysis of Mrs. Hirst's income tax liability as a result of these transactions must focus on two cases, *Turner v. Commissioner of Internal Revenue*, 49 T.C. 356 (1968), aff'd per curiam, 410 F.2d 752 (6th Cir. 1969); and *Johnson v. C. I. R.*, 495 F.2d 1079 (6th Cir. 1974) aff'd 59 T.C. 791 (1973); cert. den. 419 U.S. 1040, 95 S.Ct. 527, 42 L.Ed.2d 317. Basically, the government argues that *Johnson* is controlling, while the taxpayer contends *Turner* is still viable precedent. In our view, *Johnson* is distinguishable. *Turner* is the basis of our decision, as it was the basis of decision in the Tax Court.

In *Turner*, the donor made nine separate gifts of low basis securities, three to her children outright, and six to trusts for the benefit of her grandchildren. Each of these transfers was made on the condition that the recipient pay the resulting gift tax liability. The three individual donees contributed their respective shares of the gift taxes either from available cash or the sale of some of the donated securities. The six trust donees contributed their respective shares primarily from the sale of some of the donated securities, supplemented in two cases by loans, and in four by comparatively small amounts of current income. Aside from these small amounts of current income, there was apparently no basis for invoking Internal Revenue Code sections 671 and 677 which deal only with income

---

* Judge Craven participated in the hearing of this case but died before the opinion was prepared.

from trusts.[1] The Commissioner contended that each transfer was part sale and part gift and that the excess of the gift tax paid by each donee over the basis of the securities transferred to such donee constituted capital gain chargeable to the donor. In the Tax Court, and again on appeal to the Sixth Circuit, the Commissioner conceded that the transfers in trust were not sales. Thus, the principal problem confronted by the courts was whether the transfers to the three individuals could be classified as part gifts, part sales, resulting in the realization of capital gain, the same issue presented by the *Hirst* litigation.[2] The Tax Court in *Turner* regarded the transaction as a "net gift"[3] in the amount of the value of the shares less the gift tax, a transaction which the court held had no income tax consequences to the donor. 49 T.C. at 363. The Sixth Circuit affirmed. 410 F.2d 752.

The taxpayer in *Johnson*[4] owned securities the fair market value of which exceeded $500,000. His basis was only $10,812.50. Two days prior to his establishment of an irrevocable trust for his children's benefit, Johnson obtained $200,000 from a bank on a thirty-day note "without personal liability." The note was secured by stock. When Johnson created the trust, he transferred to it all of his interest in the stock. Apparently one month later, the trustees replaced Johnson's note with their own,[5] secured by the same shares of stock.

As a result of these transactions, the donors had $200,000 in cash, and the trust owned stock worth more than $500,000 but encumbered by a $200,000 note. The next year, Johnson paid approximately $150,000 in gift taxes.

The Tax Court in *Johnson* found the transactions were part of a plan of the donor to make the gift to the trust and to attempt to realize a substantial portion of the appreciated value of the stock for the donor without tax liability. It found that the donor retained the full amount of the loan obtained by him and used the proceeds for his own personal purposes. The Court held that the transfers were part gift, part sale, that the excess of the fair market value of the stock over the amount of the loan was a gift subject to gift taxes, that portion subject to the loan was a sale on which the taxpayer realized a capital gain to the extent the loan exceeded his basis in the stock.

The Tax Court's reasons for distinguishing *Turner* included the fact that the transfer in *Johnson* was not conditioned upon the donee's payment of the gift taxes, the donor reserved no interest in the trust corpus, the amount of the loans significantly exceeded the gift tax paid, and Johnson's transactions were part sale and part gift.

The Tax Court's judgment, but not its reasoning, was affirmed by the Sixth Cir-

1. The cases discussed in Footnote 3 of Judge Thomsen's opinion held that when there is a gift in trust subject to a condition that the applicable gift taxes be paid by the trust, the donor realizes taxable income under sections 671 and 677 to the extent that the trust pays the gift taxes out of accumulated or accruing income. Implicitly those cases hold that the donor derives no taxable income to the extent the trust pays the gift taxes out of other assets.

2. In the instant case the taxpayer's son and daughter-in-law agreed to pay, and did pay, the applicable gift taxes on the gifts to all of the donees.

3. *Turner* cited *Harrison v. Commissioner*, 17 T.C. 1350 (1952) and *Lingo v. Commissioner*, 13 T.C.M. 436 (1954) in both of which cases the donor had transferred property to a trust on the condition that the donee would pay the resultant gift taxes. In both cases the Tax Court held that in determining the value of the gifts subject to tax the gross value of the gifts should be reduced by the amount of the gift tax. The stated reason for this reduction was that the donee incurred the obligation to pay the tax as a condition of the gift; the donor did not intend to make anything other than a net gift.

4. The taxpayer's wife was included as a party to the litigation. The case also involved two other taxpayers and their wives who transferred similar securities in similar transactions.

5. More precisely, two notes were executed, one for the $200,000 principal and the other in the amount of $750 which represented the interest on the donor's note. When these two notes were executed, Johnson's "direct liability" account, which the bank had created, was credited with $200,750, leaving a zero balance in that account.

cuit. It found the substance of the transactions to be a gift of stock worth $500,000 in exchange for $200,000, $150,000 of which was used to pay the gift taxes of the donor. The court said its result could be reached by any of several routes. First, if viewed under section 61 of the Code the $200,000 was "income from whatever source derived;" the use to which $150,000 of that amount was put was of no moment. Secondly, under § 2502(d) the gift tax is the donor's primary obligation [6] and under *Old Colony Trust Co. v. Commissioner of Internal Revenue*, 279 U.S. 716, 729, 49 S.Ct. 499, 504, 73 L.Ed. 918 (1929) "[t]he discharge by a third person of an obligation to him is equivalent to receipt by the person taxed" so that here, effectively, the donee's payment of the donor's gift tax was income to the donor. Thirdly, under *Crane v. Commissioner of Internal Revenue*, 331 U.S. 1, 67 S.Ct. 1047, 91 L.Ed. 1301 (1947), the donor shed his $200,000 debt, and realized income in that amount, particularly because Johnson received cash without any liability for repayment of the notes from his own assets.

The Sixth Circuit rejected as merely conclusory the appellation "part sale and part gift" employed by the Tax Court. Also rejected were the features by which the Tax Court distinguished *Turner*, because those lost their force to the extent the loan proceeds were ultimately used to pay the gift tax. The appellate opinion in *Johnson* stated that *Turner* has no precedential value beyond its peculiar fact situation.

We do not quarrel with the oft-stated proposition that the substance of a transaction rather than its form controls an individual's tax liability.[7] Indeed, we believe that we adhere to that premise. In the present case, the Tax Court found that a gift was made.[8] Surely this finding is not clearly erroneous in the familial and noncommercial context of the transfer of this land.

■ The predominant circumstance here is that this taxpayer did not intend to sell anything; she intended only to give her property to her progeny. She did not receive anything for herself; there was no economic gain of any kind accruing to her, except release from the normal tax burden of an owner of real estate.[9]

Unlike *Turner* or the present case, *Johnson* involved a pre-transfer draw down of a portion of the appreciated value of the asset transferred, by the donor's borrowing against it immediately prior to its transfer to the donees. The gift to the trust was then made subject to the trust's paying the note. While the donor himself actually paid the gift tax, none of the $200,000 he bor-

---

6. A lien for the gift tax is created by Code § 6324(b). "If the tax is not paid when due, the donee of any gift shall be personally liable for such tax to the extent of the value of such gift."

7. See *Johnson v. C. I. R.*, 6th Cir., 495 F.2d 1079, 1082.

8. But cf. *id.* at 1082–83 n.6. The Sixth Circuit in *Johnson* said "we would be hard put to justify" the Tax Court's finding of a part gift, part sale on the facts of that case. Instead, it determined to look not to actual intent, as had the Tax Court in *Turner*, 49 T.C. at 362, but simply to see whether the taxpayer received something of value as a result of the transfer. 495 F.2d at 1083.

In the present case, whether we consider the widow's intent in making the transfer, or what she may have received as a result of the transfer, our conclusion is the same; the transaction entails no income tax.

9. Mrs. Hirst could have retained these undeveloped tracts of land without suffering any economic burden from the annual accrual of real estate taxes. She could have borrowed funds on the security of the lands and used the proceeds to pay both the taxes and interest. Had she done so, she would have retained for herself any subsequent appreciation in the value of the lands but would have reduced the amount of the estate she hoped ultimately to transmit to her son and his children by the aggregate amount of the loans she obtained to cover the taxes and the interest on the loans. Had she done that, no one would have contended that she incurred any income tax liability, but the ultimate effect would have been a transferral of the burden of payment of the real estate taxes to her son, her daughter-in-law and grandchildren. Hence, the fact that after the gifts she was no longer responsible for the payment of accruing real estate taxes is not such an economic advantage accruing to her that imposition of income taxes upon her should be warranted.

rowed was committed to payment of the tax. Thus as a result of his borrowing, and of the donee's repayment of the loan, $200,000 was put in the donor's pocket. Although we may agree with the result in *Johnson,* that is not this case. Before the present transaction, Mrs. Hirst owed nothing, and by virtue of the transactions she received nothing. She was not better off after the transfer, with the donee undertaking the burden of the gift tax; she was simply not worse off.

As to the argument that the donee's payment of the gift tax was a discharge of the donor's debt, in effect producing income for her, it is no doubt generally true that another's discharge of an obligation is productive of income, but that is not universally the case. It depends upon the relationship between the parties and the existence of other obligations. For example, where a son has borrowed from a bank and his father pays off the son's loan without discharging any obligation to the son, the payment is not taxable income to the son, but a gift. The circumstances of the transaction determine the tax consequences. The predominant circumstances here dispel the notion of any gain accruing to Mrs. Hirst.

The judgment of the Tax Court is affirmed.

ALBERT V. BRYAN, Senior Circuit Judge, dissenting [from the decision of the panel]:

Upon the majority's faithful narrative of the facts, I would affirm the Tax Court, and wholly on the circumstances so recounted of Mrs. Hirst's conveyance, I dissent from the majority's assessment of *income* taxes against her.

Edna Hirst, an 81-year old widow, was land-poor. Her only cash money was invested in savings accounts totalling approximately $25,000.00. She owned her home absolutely, and also a one-half undivided interest in a six-room office building and a one-half undivided interest in three tracts of undeveloped land, with the outstanding interests vested in her husband's estate.

The unimproved land not only provided her no income but subjected her to annual real estate taxes. Because her available cash resources were too small to meet these burdens, she thought it best to distribute her property among those whom she naturally desired to have it eventually—i. e., her son, daughter-in-law and grandchildren. Inasmuch as this would entail gift taxes far beyond her means, she and her son agreed, before the gifts were perfected, that he would pay all assessable gift taxes. The Federal gift tax came to $68,277.00 and the State gift tax to $17,192.55, a total of $85,469.55.

The gift taxes were fully satisfied, but nevertheless the Commissioner, now sustained by the majority, has complicated the transaction by assessing *income* taxes against the donor, Mrs. Hirst, on the total amount of gift taxes paid by her son. In justification it is said, contrary to the finding of the Tax Court, that the family arrangement must be viewed as consisting of two parts: (1) a gift to the extent of the value of the deeded real estate and (2) income to Mrs. Hirst to the extent of the amounts of the gift taxes assessable to her but paid on her behalf by her son.

As all masters in their respective fields of endeavor do relish a preference for problems of complexity rather than those embodying only run-of-the-mill components, the appellant Commissioner and my co-panelists turn this folksy, homespun transaction into an abstruse income tax enigma. Despite their sincerity, the plain question calling for answer here is starkly pointed up by plain facts, and it is just this: When Mrs. Hirst conveyed to her son and his family all of her real estate upon the sole understanding that her son (now used as including his wife) would pay all gift taxes assessable on the transfer, did Mrs. Hirst's act *in the circumstances* constitute a gift exclusively or a transaction giving rise to income to her?

For me these facts unalterably demonstrate that the transfer was a gift and nothing more; it did not result in income. The Tax Court's determination to this ef-

fect, it seems to me, should be allowed to stand. The partition of the agreement into a gift and an income-producing transaction was not justified in the circumstances. That Mrs. Hirst realized *income* under the attendant circumstances is a conception violently refuted by the factual background of the transfer. Equally preposterous is the result: the imposition upon Mrs. Hirst of more than $16,000.00 in *income* taxes.

### I.

The Tax Court has found and concluded that Mrs. Hirst made no sale of any kind to her family; that the transaction was entirely a gift; and finally that there was no acceptable foundation upon which to attribute income to Mrs. Hirst. *Edna Bennett Hirst*, 63 T.C. 307 (1974).

For this determination the Court looked to the substance of the agreement and did not theorize, as does the Commissioner, to descry in it income chargeable to Mrs. Hirst. The Court was sensitive to the inspiration and purposes of the agreement, giving weight to the ambience of its execution. The fact that this was a non-commercial, family transaction in which the donor received no funds with which to pay the gift or income tax assessed to her was of obvious significance. It is an incident compelled to be weighed within the measurement of the case.

█ As was said in *Commissioner of Internal Revenue v. Court Holding Company*, 324 U.S. 331, 334, 65 S.Ct. 707, 708, 89 L.Ed. 981 (1945):

"The incidence of taxation depends upon the substance of a transaction. The tax consequences which arise from gains from a sale of property are not finally to be determined solely by the means employed to transfer legal title. *Rather, the transaction must be viewed as a whole, and each step, from the commencement of negotiations to the consummation of the sale, is relevant.* . . . To permit the true nature of a transaction to be *disguised by mere formalisms*, which exist solely to alter tax liabilities, would seriously impair the effective administra-

tion of the tax policies of Congress." (Accent added.)

█ This resolve of the Tax Court is a finding of fact entitled to finality and to acceptance by the Court of Appeals without modification, since it is supported by adequate, indisputable evidence. The reports teem with decisions to the point. Again as a foremost authority is *Commissioner of Internal Revenue v. Court Holding Company*, supra, 324 U.S. 331, 333, 65 S.Ct. 707, 708, 89 L.Ed. 981 avouching the proposition in these words:

"There was evidence to support the findings of the Tax Court, and its findings *must* therefore be accepted by the courts." (Accent added.)

It enlists *Commissioner of Internal Revenue v. Scottish American Investment Co., Ltd.*, 323 U.S. 119, 123–124, 65 S.Ct. 169, 171, 89 L.Ed. 113 (1944) wherein the command was laid down with even severer insistence:

"The Tax Court has the primary function of finding the facts in tax disputes, weighing the evidence, and choosing from among conflicting factual inferences and conclusions those which it considers most reasonable. *The Circuit Courts of Appeal have no power to change or add to those findings of fact or to reweigh the evidence.* And when the Tax Court's factual inferences and conclusions are determinative of compliance with statutory requirements, the appellate courts are limited to a determination of whether they have any substantial basis in the evidence. The judicial eye must not in the first instance rove about searching for evidence to support other conflicting inferences and conclusions *which the judges or the litigants may consider more reasonable or desirable.* It must be cast directly and primarily upon the evidence in support of those made by the Tax Court. If a substantial basis is lacking the appellate court may then indulge in making its own inferences and conclusions or it may remand the case to the Tax Court for further appropriate proceedings. But if such a basis is present the process of judicial review is at an end." (Accent added.)

There is no baselessness here. Nonetheless, the majority disregards or overlooks the compulsion of this language and goes beyond the limited scope of review.

But even if the Tax Court's resolution be hailed a conclusion of law and not a finding of fact, it is still impregnable. By way of prelude to a discussion on this point, a safe guide may be quoted from *Dobson v. Commissioner of Internal Revenue*, 320 U.S. 489, 501–502, 64 S.Ct. 239, 247, 88 L.Ed. 248 (1943):

> "Congress has invested the Tax Court with primary authority for redetermining deficiencies, which constitutes the greater part of tax litigation. *This requires it to consider both law and facts. . . . [W]hen the court cannot separate the elements of a decision so as to identify a clear-cut mistake of law, the decision of the Tax Court must stand.* In view of the division of functions between the Tax Court and reviewing courts it is of course the duty of the Tax Court to distinguish with clarity between what it finds as fact and what conclusion it reaches on the law. In deciding law questions courts may properly attach weight to the decision of points of law by an administrative body having special competence to deal with the subject matter. The Tax Court is informed by experience and kept current with tax evolution and needs by the volume and variety of its work. While its decisions may not be binding precedents for courts dealing with similar problems, *uniform administration would be promoted by conforming to them where possible.*" (Accent added.)

### II.

██ Decision in the present case was put upon *Richard H. Turner*, by the Tax Court, 49 T.C. 356 (1968), which had been affirmed per curiam, 410 F.2d 752 (1969), by the Sixth Circuit. The Tax Court here accurately summed the facts and stated the conclusions of *Turner* (as they relate to the individual donees therein) precisely depicting *Turner* and *Hirst* (the present) as matching each other:

> "In *Turner* the donor made nine separate gifts of low basis securities, three to named individuals outright, . . . *Each transfer was on condition that the recipient pay the resulting gift tax liability.* The three individual donees contributed their respective shares of the gift taxes either from available cash or the sale of some of the donated securities. . . . The *Commissioner . . . argued that each transfer was part-gift and part-sale* and that the excess of the gift tax paid by each donee over the basis of the securities transferred to such donee constituted capital gain chargeable to the donor. . . . Thus, the principal issue dealt with by the Court was whether the *gifts to the three individuals* could be classified as part-sales, resulting in the realization of capital gain—*an issue identical with the one before us in the present case.*

> "In deciding against the Government, the [Tax] Court reviewed the earlier cases and concluded that their 'rationales * * * are totally inconsistent with a finding that the transfer was a part sale, part gift'. 49 T.C. at p. 362. To the contrary, the Court regarded the transaction as a 'net gift' in the amount of the value of the shares less the gift tax—*a transaction having no income tax consequences to the donor.* 49 T.C. at p. 363. The decision was affirmed by the Sixth Circuit in a per curiam opinion. 410 F.2d 752.

> "We cannot see any meaningful differences between the present case and *Turner*, and unless later decisions require us to reach a different result here we think we must follow it." (Accents added but footnotes omitted.) 63 T.C. 307, 312.

Later, the Tax Court followed *Turner* again in *Victor W. Krause*, 56 T.C. 1242 (August 31, 1971) and its judgment was not thereafter disturbed in the courts. Moreover, in *Estate of Kenneth W. Davis*, ¶ 71, 318 P–H Memo TC (December 30, 1971), the Tax Court adhered to *Turner* and was affirmed, this time by the Fifth Circuit in *Estate of Kenneth W. Davis v. Commission-*

er of Internal Revenue, 469 F.2d 694 (1972). There has never been an overthrow of Turner.

However, the Commissioner and the majority opinion assail Turner as disavowed by its own Circuit in Joseph W. Johnson, Jr., 59 T.C. 791 (1973), affirmed as Johnson v. Commissioner of Internal Revenue, 495 F.2d 1079 (6 Cir. 1974). On the contrary, study of Johnson in the Court of Appeals will utterly dispel any such claim for the effect of Johnson.

Notably, it was decided by the same court as rendered Turner, and that Circuit refused to overrule or distinguish it on the law. If Turner was not the law, Johnson gave the Sixth a wide-open opportunity to say so; but neither that Circuit, nor any other court, to repeat, has renounced Turner. Certainly, we may not presume to hold that the Sixth Circuit intended to say in Johnson that Turner was overridden, for the Sixth explicitly and advisedly declined to say so.

True, Johnson said that Turner had "no precedential value beyond its peculiar fact situation" but this declaration actually reaffirms Turner on its own facts. Since, as previously noted, the facts now before us correspond with Turner's, Johnson does not authorize us to* depart from Turner, especially in light of the just listed subsequent adoptions of Turner. The same is true of the cases that are disciples of Johnson. They are on Johnson facts which the Johnson court—the Sixth Circuit—has emphasized are peculiarly Johnson's and not Turner's.

Thus we have the Tax Court and the Courts of Appeals following Turner on its facts in an unbroken line of cases; thus, we see, too, even the case on which the Commissioner and the Court now rely—Johnson—refusing to depart from Turner. It seems strange, indeed, to me for us to be alone declaring it was untenable—especially when it appears that the Johnson court has been the only court to have dealt with the problem. Also it seems to me to be a

complete disregard of the Supreme Court's directive for treatment of the Tax Court decisions both on the facts and on the law, especially when "uniform administration would be promoted by conforming to them where possible". Dobson v. Commissioner of Internal Revenue, supra, 320 U.S. at 502, 64 S.Ct. at 247.

For the reasons urged in this dissent, I would affirm in the present case.

WINTER and BUTZNER, Circuit Judges, dissenting [from the decision of the court en banc]:

This case was initially heard by a panel consisting of Judge Bryan, Judge Butzner, and Judge Thomsen *. Judge Thomsen wrote an opinion in which Judge Butzner concurred. Judge Bryan wrote a dissent. After these opinions were circulated among the court, but before they were filed, the case was reheard en banc. Judge Haynsworth's present opinion is the result of that rehearing.

We dissent for the reasons stated in Judge Thomsen's opinion which follows:

THOMSEN, Senior District Judge.

The Commissioner of Internal Revenue appeals from a decision of the Tax Court, Edna Bennett Hirst, 63 T.C. 307 (1974) (Raum, J.), which held that a transaction, in which two transferees (taxpayer's son and daughter-in-law) paid taxpayer's state and federal gift taxes resulting from three transfers of realty by taxpayer to them and their children, did not result in the realization by her of any taxable income. The payments by the son and daughter-in-law were made pursuant to a pre-transfer agreement between taxpayer and her son, set out more fully below.

A

The essential facts are not disputed. Taxpayer, a resident of Alexandria, Virginia, is an 81-year old widow. In 1967 she

* Judge Roszel C. Thomsen, Senior United States District Judge for the District of Maryland, sat by designation.

had only one living child, her son Omer Hirst, who was married and had three children, Thomson M. Hirst, Deborah H. Nager and Edna Robin Hirst. At that time taxpayer owned the house in which she lived, a one-half interest in a six-room house being used as an office building and one-half interest in three tracts of undeveloped land. The remaining interests in the "office building" and the three tracts were in her husband's estate. Taxpayer did not have any other substantial assets, except about $25,000 on deposit in savings accounts.

The three tracts produced no income, but subjected taxpayer to real estate tax liabilities each year. To eliminate this burden on her limited liquid assets and to benefit the natural objects of her bounty, she decided to give her interest in the three tracts to her son and his family. Because such gifts would require the payment of substantial gift taxes, far in excess of taxpayer's liquid assets, she and her son orally agreed before the transfers were made that he would pay the resulting gift taxes. On April 11, 1967, taxpayer transferred her interest in one tract to Omer and his wife Ann, and her interest in another tract to two of the grandchildren and to her son as trustee for the third grandchild, a minor. On July 19, 1967, she transferred her interest in the third tract to two of the grandchildren and to the trust for the minor grandchild. All of the transfers were subject to the condition that Omer and Ann Hirst pay the applicable gift taxes. None of the tracts was subject to any mortgage, lien or other encumbrance.

In April, 1968, taxpayer filed a United States gift tax return listing the three parcels with adjusted basis and appraised value for each as follows:

| | Donor's Adjusted Basis | Value |
|---|---|---|
| Tract 1 | $4,654 | $291,832.50 |
| Tract 2 | 3,723 | 119,404.50 |
| Tract 3 | –0– | 33,351.50 |

Taxpayer computed her gift tax liability resulting from these transfers on a "net gift" basis; she reduced the total value of the properties transferred by the sum of the state and federal gift taxes which her son and his wife "agreed to pay as a condition to donor making the gift", and showed "total net gifts" of $359,118.95.[1] Omer Hirst and his wife paid the federal gift tax in the amount of $68,277, by check dated April 8, 1968, payable to the Internal Revenue Service.

The Virginia gift tax was paid by three checks, one dated April 22, 1968, for $15,440, one dated July 15, 1968, for $253, and one dated June 6, 1969, for $1,499.55, all drawn by Omer Hirst. The checks were mailed on or about their respective dates and in each instance received shortly thereafter by the Virginia Department of Taxation, the payee. A computational error in the amount of the first check made the second check necessary; the third check was sent when taxpayer and her son decided not to contest the refusal of the Virginia authorities to agree that the value of the gifts should be reduced by the amount of the gift taxes paid by donees. The first two checks were not presented by the payee for payment until some time in February, 1969, at which time the drawee bank refused to honor them because of their stale dates, although sufficient funds were available. After learning that the checks had been dishonored, Omer Hirst instructed the bank to honor them when presented again. Soon thereafter the checks were presented and paid.

On her 1968 federal income tax return Mrs. Hirst, a cash basis taxpayer, made no reference to the payments made by donees in satisfaction of her gift tax obligations. In his deficiency notice to taxpayer the Commissioner determined that:

"[A]s the result of the gift of your one-half interest in three tracts of real estate

---

1. Recognizing that the net amount of gifts and the gift tax itself are mutually dependent variables, taxpayer computed the gift tax in accordance with a formula that was substantially the same as the formula subsequently adopted for use in such situations by Rev.Rul. 71–232, 1971–1 C.B. 275.

with a fair market value of $444,588.50, subject to the condition that the recipients would pay both the Federal and State gift tax, you have received taxable income as shown below:

| | |
|---|---|
| Federal gift tax | $68,277.00 |
| Virginia gift tax | 17,192.55 |
| Total gift tax paid | 85,469.55 |
| Less adjusted basis of ½ interest in real estate | 8,377.00 |
| Realized gain | 77,092.55 |
| Recognized gain—50% | 38,546.28 |

The Commissioner also made other adjustments which taxpayer concedes are correct except to the extent that they reflect automatic changes attributable to the inclusion of the $38,546.28 long-term capital gain in her taxable income for the calendar year 1968.

## B

The principal issue for decision in this case is whether taxpayer realized income because the transferees of one of the three properties agreed to pay and paid the federal and state gift taxes resulting from the three transfers. If that issue is decided in favor of the Commissioner, the question arises whether the capital gain was realized

in 1967 (the year of the transfers) or 1968 (the year when the gift tax returns were filed and the taxes shown thereon were paid).[2]

The relevant statutes and regulations are set out in a statutory supplement at the end of this opinion.

The Tax Court prefaced its analysis by noting correctly:

" * * * there can be no reasonable dispute that liability for the gift tax is placed by statute primarily upon the donor, section 2502(d) of the 1954 Code, and that payment of the tax by the donee must be regarded as discharging that liability of the donor. Moreover, the discharge of a solvent taxpayer's liability is ordinarily regarded as conferring a benefit upon him which may furnish the basis for taking it into account in the computation of taxable income". 63 T.C. at 310. *Old Colony Trust Co. v. Commissioner of Internal Revenue*, 279 U.S. 716, 729, 49 S.Ct. 499, 73 L.Ed. 918 (1929); *Helvering v. Bruun*, 309 U.S. 461, 469, 60 S.Ct. 631, 84 L.Ed. 864 (1940); *Wall v. United States*, 164 F.2d 462, 466 (4 Cir. 1947); Reg. 1.61–14(a). Cf. *Douglas v. Willcuts*, 296 U.S. 1, 56 S.Ct. 59, 80 L.Ed. 3 (1935).

The Tax Court then discussed a number of cases involving gifts in trust.[3] Those

---

**2.** As noted above, an additional amount of $1,499.55, assessed by the Commonwealth of Virginia in 1969, was paid in 1969.

**3.** In *Staley v. Commissioner of Internal Revenue*, 47 B.T.A. 260 (1942), aff'd 136 F.2d 368 (5 Cir.), cert. denied, 320 U.S. 786, 64 S.Ct. 196, 88 L.Ed. 473 (1943), the donor conveyed stock in trust for the benefit of some of his children, reserving to himself a specified amount of trust income which he intended to use and used to pay gift taxes. Both courts held that the income reserved by the donor was taxable to him as ordinary income.

In *Sheaffer's Estate v. Commissioner of Internal Revenue*, 37 T.C. 99 (1961), aff'd 313 F.2d 738 (8 Cir.), cert. denied, 375 U.S. 818, 84 S.Ct. 55, 11 L.Ed.2d 53 (1963), the donors transferred stock to trusts for the benefit of their children, but gave the trustees discretion to use trust income to pay the donor's gift tax liability. The gift tax was paid in part by current income of the trusts, and in part by borrowed funds. The Eighth Circuit stated: "What the

trustees received as trust income and applied to payment of the gift tax, the [donors] in reality constructively received, and on that the [donors] must be taxed." 313 F.2d at 743.

A second proceeding involving the Sheaffer trusts, *Estate of Craig R. Sheaffer*, 25 TCM 646 (1966), dealt with the repayment of the loan out of trust income of a later year, and also with the payment of a deficiency in gift tax out of trust income received during a still later year. It was held that the repayment of the loan out of trust income did not give rise to the realization of taxable income under § 677 but that the use of current income to pay the gift tax deficiency was taxable to the donor in accord with the first *Sheaffer* case.

In *Commissioner of Internal Revenue v. Morgan's Estate*, 37 T.C. 981 (1962), aff'd 316 F.2d 238 (6 Cir.), cert. denied, 375 U.S. 825, 84 S.Ct. 68, 11 L.Ed.2d 58 (1963), the trust instrument provided that the trustees should pay the donor's gift tax liability. The trustees had the discretion, in order to obtain the funds neces-

cases were controlled by IRC §§ 671 and 677, which deal with trust income applied for the benefit of the grantor, and presented problems which are somewhat different from those presented by the instant case. The decisions therein are not inconsistent with the decision we have reached in this case.

The Tax Court placed principal reliance upon *Commissioner of Internal Revenue v. Turner*, 49 T.C. 356 (1968), aff'd per curiam, 410 F.2d 752 (6 Cir. 1969). In *Turner*, the donor made nine separate gifts of low basis securities, three to named individuals outright, and six to trusts for the benefit of minors. Each transfer was made on condition that the recipient pay the resulting gift tax liability. The three individual donees contributed their respective shares of the gift taxes either from available cash or from the sale of some of the donated securities. The six trust donees contributed their respective shares primarily from the sale of some of the donated securities, supplemented in two instances by loans, and in four instances by a comparatively small amount of current income. Except for these small amounts of current income, there appears to have been no basis for invoking §§ 671 and 677 of the Code, which, as noted above, deal only with income from trusts. In his statutory deficiency notice, the Commissioner took the position that each transfer was part gift and part sale and that the excess of the gift tax paid by each donee over the basis of the securities transferred to such donee constituted capital gain chargeable to the donor. See 49 T.C. at 360. However, the Commissioner conceded in the Tax Court that the transfers in trust were not sales. *Id.* at 362. On appeal to the Sixth Circuit, the Commissioner again conceded that the amounts paid by the trustees to the donor were not taxable to her.

410 F.2d at 753. Thus, the principal issue dealt with by the courts was whether the transfers to the three individuals could be classified as part gifts, part sales, resulting in the realization of capital gain, an issue similar to the one before us in the present case.[4] The Tax Court regarded the transaction as a "net gift" in the amount of the value of the shares less the gift tax, a transaction which it deemed to have no income tax consequences to the donor. 49 T.C. at 363. The decision was affirmed by the Sixth Circuit in a short per curiam opinion. 410 F.2d 752.

The issues in this case are similar to those in *Turner*. However, we are satisfied that the decision in *Turner* was wrong. Characterizing a transaction as a "net gift" for *gift* tax purposes does not preclude treating the transaction as a taxable event giving rise to income for *income* tax purposes. Indeed, under the facts of the instant case, it requires such treatment.

The Sixth Circuit itself declined to follow *Turner* in *Johnson v. Commissioner of Internal Revenue*, 495 F.2d 1079 (6 Cir.), cert. denied, 419 U.S. 1040, 95 S.Ct. 527, 42 L.Ed.2d 317 (1974). In *Johnson*, the donors transferred low basis stock to several trusts after having borrowed against the stock, using part of the borrowed funds to pay the gift taxes which resulted from the transfers and retaining the rest themselves. The trustees exonerated the donors from any obligation to repay the loans by substituting notes of the trusts for the notes of the donors. The Tax Court held, 59 T.C. 791 (1973), that the transfers in question were in reality part sales and part gifts, and were taxable to the donors as such. The Sixth Circuit affirmed the judgment but not the reasoning of the Tax Court, and in its opinion stated: "The substance of a transaction rather than its form must ulti-

---

sary to pay the tax, either to sell corpus or to borrow using the corpus as security. They chose the latter method and paid the tax in 1956. The loan was repaid from the income of the trusts in later years. It was held that such income was not taxable to the decedent in 1957 and 1958. Apparently no effort had been made to tax the donor for the cash benefit she re-

ceived in the year in which the gift taxes were paid.

4. In our case, two of the five donees agreed to pay and did in fact pay all the gift taxes in question, but no issue has been presented to us in this case that would make anything turn upon this fact. See, however, footnote 8, below.

mately determine the tax liabilities of individuals," .citing *Gregory v. Helvering*, 293 U.S. 465, 470, 55 S.Ct. 266 (1935); *Commissioner of Internal Revenue v. Court Holding Co.*, 324 U.S. 331, 334, 65 S.Ct. 707, 89 L.Ed. 981 (1945). The court also stated: "The gift tax liability is the *donor's* legal obligation under section 2502(d) of the Code, and '[t]he discharge by a third person of an obligation to him is equivalent to receipt by the person taxed'." 495 F.2d at 1082, 1083 (emphasis in original). The court discussed *Turner* at length, and concluded: "*Turner* has no precedential value beyond its peculiar fact situation, in view of the Commissioner's concessions in that case both in the Tax Court and on appeal to this Court." 495 F.2d at 1086.

In the case now before us for review, the Tax Court said:

"We recognize that there is much force to the Government's position. The gift tax itself is imposed only upon the 'net gift', i. e., upon the gross amount of the property transferred minus the gift tax paid by the donee. In substance, a portion of the transferred property equal in value to the amount of the gift tax is not treated as having been part of the gift. But surely that portion did not vanish into thin air, and a strong argument can be advanced for the conclusion that it was exchanged for the donee's payment of the gift tax on the 'net gift', a transaction that may result in the realization of gain or loss depending upon the donor's basis in the property. * * * However, in the absence of any clear-cut overruling of prior law by a court of appeals, we are not prepared at this time to reexamine an intricate and consistent pattern of decision that has evolved over the years in this field, notwithstanding that there may be much to be said in favor of a more 'realistic' approach to the problem." 63 T.C. at 315.

Whatever may be said of the pattern of the prior decisions, it is our responsibility to apply to the facts of this case the appropriate statutes, regulations and legal principles. We must consider both the gift tax effect and the income tax effect of the transaction, so that the taxpayer is neither improperly taxed nor improperly escapes taxation.

The essential facts are that taxpayer's half-interest in the three tracts of unimproved land not only yielded her no income but were a drain on her liquid assets. To eliminate this burden, she and her son agreed in advance that she would transfer her interest in the three tracts to her son and his family, on condition that he and his wife would pay the resulting gift taxes, which they knew would far exceed taxpayer's liquid assets. Taxpayer transferred the properties and her son and his wife paid the gift taxes, which in the returns filed were computed on the net gift in the manner described in note 1, above.

By using that method of computing the gift tax, which both sides in this case agree was proper,[5] taxpayer avoided gift tax liability on that portion of the value of the transfers represented by the amount of the gift taxes. And, although taxpayer was primarily responsible for the payment of those gift taxes, they were in fact paid by two of the donees pursuant to the agreement made before the transfers.

The discharge of a solvent taxpayer's liability is ordinarily regarded as conferring a benefit which may result in income to the taxpayer. *Old Colony Trust Co. v. Commissioner of Internal Revenue*, 279 U.S. 716, 729, 49 S.Ct. 499, 73 L.Ed. 918 (1929). The effect of what was done in this case is the same as though the son had paid the money directly to taxpayer·and she had used it to discharge her gift tax liabilities.

**5.** Where a gift is made on the condition that the donee pay the resulting gift taxes, only that portion of the value of the property transferred which exceeds the amount of the gift taxes due on the transfer is considered to have been transferred with donative intent, and therefore characterized as a gift, subject to gift taxes. *Harrison v. Commissioner*, 17 T.C. 1350, 1355–57 (1952); *Lingo v. Commissioner*, 13 TCM 436, 441 (1954). Rev.Rul. 71–232, 1971–1, C.B. 275.

In substance, taxpayer received the amount of the gift taxes in exchange for the transfer of the properties.[6] To the extent that the gift taxes paid by donees exceeded taxpayer's basis in the properties transferred, she realized income subject to capital gain taxes. To the extent that the fair market value of the properties transferred exceeded the amount of the gift taxes paid, there was a gift.[7] I.R.C. § 2512(b); Reg. 1.1001–1(e).

This result is not only required by the applicable law, it is fair both to the taxpayer and to the government. No part of the value of the property transferred has been taxed twice, and no part has escaped proper taxation.[8] We intimate no opinion as to the income tax consequences of a transfer under facts different from those in the instant case.

### C

Having found that income accrued to the donor, we now address the question of the year in which the income should be taxed. Under the controlling provisions then in effect,[9] the gift taxes resulting from the 1967 property transfers were due from the donor on or before April 15, 1968. The checks for the payment of the federal and state gift taxes (except for an adjustment of state taxes in the amount of $1,499.55, for which a check was sent in 1969) were delivered to the IRS and to the appropriate state agency in 1968. The Commissioner takes the position that the income to taxpayer resulting from the transaction (except for the $1,499.55) should be treated as having been realized in 1968. Taxpayer argues that the taxable event, if any, occurred in 1967 when the property transfers were made and her son promised to pay the resulting gift taxes.

We agree with the Commissioner that under the applicable law and the facts of this case, the taxable gain to Mrs. Hirst, a cash basis taxpayer, was realized when the gift taxes were paid. A promise to pay money in a future year does not represent income when the promise is made or received by the taxpayer unless the amount of the obligation is ascertainable in the taxable year and the promise can be readily converted into cash in the ordinary course of business.[10] It follows that all but $1,499.55 of the gift taxes were taxable as a capital gain to taxpayer in 1968, and that the $1,499.55 was taxable in 1969.[11]

---

6. Taxpayer's argument that the payment of the taxes was a gift back to her is not supported by the facts stipulated by the parties and testified to by the son.

7. See *Malone v. United States*, 326 F.Supp. 106 (N.D.Miss.1971), aff'd per curiam, 455 F.2d 502 (5 Cir. 1972).

8. It is not necessary for us to decide in this case whether the increase in the basis in the hands of the donees represented by the payment of the gift tax should be allocated entirely to the property transferred to the son and daughter-in-law, or should be apportioned among all the properties transferred. Nor is it necessary for us to decide whether the basis of one or more or none of the properties in the hands of the donees will include both (1) the usual increase in the donees' basis by the amount of the gift tax under I.R.C. § 1015(d), and (2) the amount of the consideration (measured by the gift taxes) paid by the son and daughter-in-law for the properties. Reg. 1.1015–4(a). See *Johnson v. Commissioner*, 495 F.2d at 1085–86. See also I.R.C. §§ 1011(a), 1015(a); Reg. 1.1015–5(a)(1)(i), 1.1016–6(a).

9. Sections 6019(a), 6075(b), 6161(a), I.R.C., before its amendment in 1970.

10. *Edelman v. United States*, 329 F.2d 950, 954, 165 Ct.Cl. 91 (1964); *Denver & Rio Grande Western R. Co. v. United States*, 318 F.2d 922, 926, 162 Ct.Cl. 1 (1963); *Cowden v. Commissioner of Internal Revenue*, 289 F.2d 20 (5 Cir. 1961); *Perry v. Commissioner of Internal Revenue*, 152 F.2d 183, 187–188 (8 Cir. 1945); *Bedell v. Commissioner of Internal Revenue*, 30 F.2d 622, 624 (2 Cir. 1929); *Warren Jones Co. v. Commissioner*, 60 T.C. 663 (1973); *Ennis v. Commissioner*, 17 T.C. 465 (1951). See also *Burnet v. Logan*, 283 U.S. 404, 51 S.Ct. 550, 75 L.Ed. 1143 (1931); *United States v. Boston & M. R. Co.*, 279 U.S. 732, 736, 49 S.Ct. 505, 73 L.Ed. 929 (1929); *Hughes v. Commissioner*, 32 B.T.A. 1248 (1935). Cf. *Crane v. Commissioner of Internal Revenue*, 331 U.S. 1, 67 S.Ct. 1047, 91 L.Ed. 1301 (1947).

11. Taxpayer makes an alternative contention that she received the income represented by the payment of the Virginia gift taxes in 1969, when the checks were paid, rather than in 1968, when the checks were delivered (except

The decision of the Tax Court is reversed and the case remanded to it for calculation of the amount of additional income tax payable by Mrs. Hirst.

*Reversed and Remanded.*

## STATUTORY SUPPLEMENT

*Sections of the I.R.C. 1954, as amended before 1969, and Regulations thereunder, which bear directly or by analogy on the issues herein or in cases discussed herein.*

Code § 61. *Gross income defined*

(a) *General definition.*—Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:

\* \* \* \* \* \*

(3) Gains derived from dealings in property;

\* \* \* \* \* \*

(12) Income from discharge of indebtedness;

\* \* \* \* \* \*

Reg. 1.61–14(a) *Miscellaneous items of gross income*

In addition to the items enumerated in section 61(a), there are many other kinds of gross income. For example \* \* \* Another person's payment of the taxpayer's income taxes constitutes gross income to the taxpayer unless excluded by law. \* \*

Reg. 1.446–1(c) *Permissible methods—(1) In general.*

Subject to the provisions of paragraphs (a) and (b) of this section, a taxpayer may compute his taxable income under any of the following methods of accounting:

(i) *Cash receipts and disbursements method.* Generally, under the cash receipts

and disbursements method in the computation of taxable income, all items which constitute gross income (whether in the form of cash, property, or services) are to be included for the taxable year in which actually or constructively received. Expenditures are to be deducted for the taxable year in which actually made. For rules relating to constructive receipt, see § 1.451–2. For treatment of an expenditure attributable to more than one taxable year, see section 461(a) and paragraph (a)(1) of § 1.461–1.

Reg. 1.451–2 *Constructive receipt of income*

(a) *General rule.* Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given. \* \*

Code § 671. *Trust income, deductions, and credits attributable to grantors and others as substantial owners*

Where it is specified in this subpart that the grantor or another person shall be treated as the owner of any portion of a trust, there shall then be included in computing the taxable income and credits of the grantor or the other person those items of income, deductions, and credits against tax of the trust which are attributable to that portion of the trust to the extent that such items would be taken into account under this chapter in computing taxable income or credits against the tax of an individual. \* \* \*

Code § 677. *Income for benefit of grantor*

(a) *General rule.*—The grantor shall be treated as the owner of any portion of a

the check for the adjustment of $1,499.55, referred to above, which was delivered in 1969). For tax purposes, while payment by check is conditional upon the payment of the check when presented, the payment of the check relates back and the debt is considered to have been discharged on the date of delivery. *Estate of Spiegel*, 12 T.C. 524, 527 (1949). See also

*Estate of Bradley v. Commissioner of Internal Revenue*, 19 B.T.A. 49, 51 (1930), aff'd 56 F.2d 728, 729 (6 Cir. 1932). The Commissioner conceded below that the small amount of additional Virginia gift taxes on the transfer which were paid by a check delivered in June 1969 were income to the donor in 1969, not in 1968.

trust, whether or not he is treated as such owner under section 674, whose income without the approval or consent of any adverse party is, or, in the discretion of the grantor or a non-adverse party, or both, may be—

(1) distributed to the grantor;

(2) held or accumulated for future distribution to the grantor; or

\*     \*     \*     \*     \*     \*

### Code § 1001. *Determination of amount of and recognition of gain or loss*

(a) *Computation of gain or loss.*—The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 1011 for determining gain, \*   \*   \*

(b) *Amount realized.*—The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received.

\*     \*     \*     \*     \*     \*

(c) *Recognition of gain or loss.*—In the case of a sale or exchange of property, the extent to which the gain or loss determined under this section shall be recognized for purposes of this subtitle shall be determined under section 1002.

\*     \*     \*     \*     \*     \*

### Reg. 1.1001–1(e) *Transfers in part a sale and in part a gift.*

(1) Where a transfer of property is in part a sale and in part a gift, the transferor has a gain to the extent that the amount realized by him exceeds his adjusted basis in the property. However, no loss is sustained on such a transfer if the amount realized is less than the adjusted basis. For the determination of basis of property in the hands of the transferee, see § 1.1015–4. For the allocation of the adjusted basis of property in the case of a bargain sale to a charitable organization, see § 1.1011–2.

(2) *Examples.* The provision of subparagraph (1) may be illustrated by the following examples:

*Example* (1). A transfers property to his son for $60,000. Such property in the hands of A has an adjusted basis of $30,000 (and a fair market value of $90,000). A's gain is $30,000, the excess of $60,000, the amount realized, over the adjusted basis, $30,000. He has made a gift of $30,000, the excess of $90,000, the fair market value, over the amount realized, $60,000.

\*     \*     \*     \*     \*     \*

### Code § 1002. *Recognition of gain or loss*

Except as otherwise provided in this subtitle, on the sale or exchange of property the entire amount of the gain or loss, determined under section 1001, shall be recognized.

### Code § 1011. *Adjusted basis for determining gain or loss*

The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis (determined under section 1012 or other applicable sections of this subchapter \*   \*   \*), adjusted as provided in section 1016.

### Code § 1012. *Basis of property—Cost*

The basis of property shall be the cost of such property, \*   \*   \*

### Reg. 1.1012–2 *Transfers in part a sale and in part a gift*

For rules relating to basis of property acquired in a transfer which is in part a gift and in part a sale, see § 1.–170A–4(c), § 1.1011–2(b), and § 1.1015–4.

### Code § 1015. *Basis of property acquired by gifts and transfers in trust*

(a) *Gifts after December 31, 1920.*—If the property was acquired by gift after December 31, 1920, the basis shall be the same as it would be in the hands of the donor or the last preceding owner by whom it was not acquired by gift, \*   \*   \*

\*     \*     \*     \*     \*     \*

(d) *Increased basis for gift tax paid.*—

(1) *In general.*—If—

(A) the property is acquired by gift on or after the date of the enactment of the Technical Amendments Act of 1958, the

basis shall be the basis determined under subsection (a), increased (but not above the fair market value of the property at the time of the gift) by the amount of gift tax paid with respect to such gift, `* * *`

Reg. 1.1015–4  *Transfers in part a gift and in part a sale*

(a) *General rule.* Where a transfer of property is in part a sale and in part a gift, the unadjusted basis of the property in the hands of the transferee is the sum of—

(1) Whichever of the following is the greater:

(i) The amount paid by the transferee for the property, or

(ii) The transferor's adjusted basis for the property at the time of the transfer, and

(2) The amount of increase, if any, in basis authorized by section 1015(d) for gift tax paid (see § 1.1015–5).

*    *    *    *    *    *

Reg. 1.1015–5  *Increased basis for gift tax paid.*

(a) *General rule.* (1)(i) Subject to the conditions and limitations provided in section 1015(d), as added by the Technical Amendments Act of 1958, the basis (as determined under section 1015(a) and paragraph (a) of § 1.1015–1) of property acquired by gift is increased by the amount of gift tax paid with respect to the gift of such property. Under section 1015(d)(1)(A), such increase in basis applies to property acquired by gift on or after September 2, 1958 (the date of enactment of the Technical Amendments Act of 1958). Under section 1015(d)(1)(B), such increase in basis applies to property acquired by gift before September 2, 1958, and not sold, exchanged, or otherwise disposed of before such date. If section 1015(d)(1)(A) applies, the basis of the property is increased as of the date of the gift regardless of the date of payment of the gift tax. `* * *` Any increase in basis under section 1015(d) can be no greater than the amount by which the fair market value of the property at the time of the gift exceeds the basis of such property in the hands of the donor at the time of the

gift. See paragraph (b) of this section for rules for determining the amount of gift tax paid in respect of property transferred by gift.

*    *    *    *    *    *

Code § 1016.  *Adjustments to basis*

(a) *General rule.*—Proper adjustment in respect of the property shall in all cases be made—

(1) for expenditures, receipts, losses, or other items, properly chargeable to capital account, `* * *`

*    *    *    *    *    *

Reg. 1.1016–5  *Miscellaneous adjustments to basis*

*    *    *    *    *    *

(p) *Gift tax paid on certain property acquired by gift.* Basis shall be adjusted by that amount of the gift tax paid in respect of property acquired by gift which, under section 1015(d), is an increase in the basis of such property.

*    *    *    *    *    *

Reg. 1.1016–6  *Other applicable rules*

(a) Adjustments must always be made to eliminate double deductions or their equivalent. `* * *`

Code § 2502(d) provides that the Gift Tax, which is imposed by § 2501, "shall be paid by the donor".

Code § 2512  *Valuation of gifts*

*    *    *    *    *    *

(b) Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall be deemed a gift, and shall be included in computing the amount of gifts made during the calendar year.

Code § 6019  *Gift tax returns*

(a) *In general.*—Any individual who in any calendar year makes any transfers by gift (except those which under section 2503(b) are not to be included in the total amount of gifts for such year) shall make a return with respect to the gift tax imposed by subtitle B.

*    *    *    *    *    *

Code § 6075 *Time for filing estate and gift tax returns*

\* \* \* \* \* \*

(b) *Gift tax returns*—Returns made under section 6019 (relating to gift taxes) shall be filed on or before the 15th day of April following the close of the calendar year.

Code § 6151 *Time and place for paying tax shown on returns*

(a) *General rule.*—Except as otherwise provided in this section, when a return of tax is required under this title or regulations, the person required to make such return shall, without assessment or notice and demand from the Secretary or his delegate, pay such tax to the principal internal revenue officer for the internal revenue district in which the return is required to be filed, and shall pay such tax at the time and place fixed for filing the return (determined without regard to any extension of time for filing the return).

\* \* \* \* \* \*

(c) *Date fixed for payment of tax.*—In any case in which a tax is required to be paid on or before a certain date, or within a certain period, any reference in this title to the date fixed for payment of such tax shall be deemed a reference to the last day fixed for such payment (determined without regard to any extension of time for paying the tax).

Va.Ann.Code §§ 58–223 is similar to I.R.C. § 2502(d) and § 58–221 is similar to I.R.C. § 2512(b).

